# State of Vermont v. Carolyn Therrien, Executrix of the Estate of Andrew Therrien

[633 A.2d 272]

No. 92-477

Present: **Allen, C.J., Gibson, Dooley and Morse, JJ.**

Opinion Filed September 24, 1993

*Jeffrey L. Amestoy*, Attorney General, and *Philip J. Cykon* and *Conrad W. Smith*, Assistant Attorneys General, Montpelier, for Plaintiff-Appellee.

*Richard E. Davis* and *Richard E. Davis, Jr.*, of *Richard E. Davis Assocs.*, Barre, for Defendant-Appellant.

**Dooley, J.** This proceeding began with a complaint filed in the Orleans Superior Court by the State of Vermont against Andrew Therrien charging him with violating Act 250, 10 V.S.A. §§ 6001–6108, and the Consumer Fraud Act, 9 V.S.A. §§ 2451–2462, in connection with his Salem Heights development in the Town of Derby. Andrew Therrien died after trial but before judgment was entered against him. His wife Carolyn was substituted as defendant, in her capacity as executrix and distributee of the estate of her husband. The estate also became a defendant. The court then issued its August 10, 1992 judgment nunc pro tunc effective July 9, 1990. Defendant Carolyn Therrien appeals from both the substitution and judgment order, arguing that the proceeding should have ended on her husband's death and that a part of the judgment dealing with water systems in the development was beyond the power of the court. We affirm.

In October 1975, Andrew Therrien was issued a land use permit pursuant to Act 250 allowing him to subdivide 100 acres in the Salem Heights development into seventy-seven residential lots. Therrien failed to comply with the septic and well water system conditions in the permit; in fact, the superior court later found his noncompliance both willful and intentional. As a result of Therrien's failure to construct appropriate septic and well systems, numerous problems developed: some residents

had little or no water pressure, sewage effluent surfaced and stagnated, and water wells were eventually contaminated with fecal waste.

Trial was concluded and the case taken under advisement on July 9, 1990. The court issued its findings, conclusions and order on July 10, 1991, adjudging Therrien liable for violations of both Act 250 and the Consumer Fraud Act. In the interim between trial and judgment, however, Andrew Therrien had died. Therrien's death on June 15, 1991 was suggested upon the record on July 16, 1991.

In its July 10, 1991 decision, the court cited Therrien for nine violations of his Act 250 land use permit, including installation of community water systems not allowed under his permit; installation of improper individual septic systems, community septic systems, and collection sewers; failure to install appropriate septic systems as required by the land use permit; failure to comply with the isolation distances for water wells and lines from septic systems; failure to show land purchasers the land use permit and associated documentation; and, finally, failure to seek appropriate amendments to the land use permit. The court also found Therrien liable for unfair or deceptive acts and practices prohibited by the Consumer Fraud Act, 9 V.S.A. § 2453, for selling subdivision lots not in compliance with the land use permit. The court ordered Therrien to remedy the water supply and septic system deficiencies.

In late August 1991, the court granted the State's motion to substitute the estate of Andrew Therrien as a party for Andrew Therrien, but denied a motion to substitute defendant Carolyn Therrien. In early September 1991, Andrew Therrien's estate was opened, and defendant was appointed executrix. In February 1992, the court granted the State's motion to amend the July 10, 1991 judgment to bind the estate and executrix; in the alternative, the court also granted the State's motion for judgment nunc pro tunc effective July 9, 1990. Thereafter, on August 10, 1992, the court entered the judgment order substituting the estate of Andrew Therrien and defendant as parties. The defendant now appeals.[1]

---

[1] Carolyn Therrien has not appealed the substitution of the estate of Andrew Therrien.

On appeal, defendant argues that: (1) the State's cause of action does not survive the death of Andrew Therrien; (2) the judgment order could not be issued nunc pro tunc to a date before the death of Andrew Therrien; (3) it was error to name defendant as a party and impose personal liability on her; and (4) it was error to alter the conditions of paragraph 5 of the Act 250 permit in the judgment order. We take these arguments in order.

Under V.R.C.P. 25(a)(1), a court may order the substitution of proper parties "[i]f a party dies and the claim is not thereby extinguished." To meet the requirements of Rule 25(a)(1), the claim must survive the death of the party and a proper replacement party must be substituted.

██ The second requirement was met here because an executor or administrator may defend actions that survive that were "commenced in the lifetime of the deceased." 14 V.S.A. § 1401. Additionally, "[a] person having a contingent or other claim against a deceased person may prosecute the same against the executor . . . [or] devisees." 14 V.S.A. § 1417. Thus, under either § 1401 or § 1417, defendant in her capacity as executrix was a proper party for substitution. Similarly, under § 1417, defendant in her capacity as devisee (distributee) was a proper party for substitution. Thus, if the State's claims against Andrew Therrien survived his death, defendant as executrix and distributee was a proper party for substitution. See *McSurely v. McClellan*, 753 F.2d 88, 99 (D.C. Cir.) (holding under virtually identical federal rule that "the distributee of a distributed estate is a 'proper party' for substitution under Rule 25(a)(1)"), *cert. denied*, 474 U.S. 1005 (1985).

██ Defendant argues that the action abated on Andrew Therrien's death because all actions abated at common law and no statute authorizes survival of the claims in this case. We agree that neither Act 250 nor the Consumer Fraud Act directly and explicitly authorizes survival of claims thereunder. We also find no general survival statute that explicitly addresses these claims. Section 1417 broadly states that when a party has a contingent or other claim against the deceased, "an action commenced against the deceased before death may be prosecuted to final judgment." 14 V.S.A. § 1417. Read literally, the section

would allow for the survival of all actions. This literal reading would, however, render superfluous the specific statutes on survival of actions. See 14 V.S.A. §§ 1451–1453. Further, the history of § 1417 marks it as procedural, not substantive. See *Boyden v. Ward*, 38 Vt. 628, 634 (1866) (discussing predecessor to § 1417 and noting that plaintiff could bring suit directly against executor or administrator when there was "mere omission" of appointment of commissioners, but did not authorize claims otherwise barred). The section specifies a proper procedure if a claim against the decedent otherwise survives. See *Kreichman v. Webster*, 110 Vt. 105, 110, 2 A.2d 199, 201 (1938) (construing § 1417 predecessor and holding that "if for any reason the appointment of commissioners is omitted, a claim *which is not otherwise barred* may be prosecuted against the executor or administrator") (emphasis added). Despite its broad wording, § 1417 does not direct the survival of claims at issue in this case.

Defendant correctly notes that the survival statutes do not specifically allow for the survival of the actions brought under Act 250 and the Consumer Fraud Act. See 14 V.S.A. §§ 1451 (survival of causes arising out of injury to personal or real property), 1452 (causes arising out of personal injuries), 1453 (actions arising under §§ 1451–1452 may be prosecuted for or against executor or administrator of estate). It is important to recognize, however, that these statutes were adopted in the early nineteenth century.[2] If we accept defendant's argument, no claims created by the Legislature in this century would survive, whatever the practical consequences of abatement. We find that result so unreasonable as to conflict with the basic purposes of Act 250 and the Consumer Fraud Act.

Act 250 and the Consumer Fraud Act are remedial legislation. See *Fancher v. Benson*, 154 Vt. 583, 586, 580 A.2d 51, 53 (1990); 1969, No. 250 (Adj. Sess.), § 1 (purposes of Act 250 are remedial); 10 V.S.A. § 8221(b)(2) (courts authorized to "order remedial actions to be taken to mitigate hazard to human health

---

[2] The general list of actions that survive is derived from 1821, ch. 3, §§ 62–64. The specific provision on personal injury actions is derived from 1847, No. 42, § 1. While there have been amendments dealing with procedure, particularly to what is now 14 V.S.A. § 1453, there have been no substantive amendments to these provisions since their enactment.

or the environment" for any Act 250 violations). Nothing demonstrates that better than the facts of this case. Although the State is the plaintiff, the real beneficiaries of this action are the persons who bought lots in the Salem Heights development. Andrew Therrien developed and sold the lots with widespread violations of the Act 250 permit that caused inadequate, failed and unhealthful sewer and water systems. As a result, the purchasers faced difficult and unhealthful living conditions and incurred large expenses in correcting the permit violations. The judgment order of the court requires these conditions to be corrected at the expense of the developer.

The profits from the sale of lots in Salem Heights development went to Andrew Therrien and presumably are reflected in the amount present in his estate. If this action abates, Therrien's devisees will reap the profit from the development while the lot owners incur the large expense of obtaining adequate sewer and water systems consistent with public health standards. The basic protections created by Act 250 and the Consumer Fraud Act would be eviscerated, and defendant would receive a windfall of ill-gotten gains.

■■ There is an inconsistency between the remedial purposes of Act 250 and the Consumer Fraud Act, on the one hand, and the common-law abatement rule. We must apply remedial legislation liberally to accomplish its purposes. See *Grenafege v. Department of Empl. Sec.*, 134 Vt. 288, 290, 357 A.2d 118, 120 (1976). Although we usually apply the plain meaning of legislation, our overall function is to give effect to legislative intent, deriving that intent "from the entire enactment, its reason, purpose and consequences" so that "the letter of a statute or its literal sense must yield where it conflicts with legislative purpose." *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 49–50, 527 A.2d 227, 228 (1986). Therefore, the letter of the survival statutes, to the extent they can be read to exclude the survival of claims under Act 250 or the Consumer Fraud Act, must yield here for the very reason that it conflicts with the legislative purposes of those remedial acts.

■ Other courts have faced the conflict between the common-law abatement rule and the purposes of remedial legislation and adopted a general rule that remedial actions survive

the death of the defendant. See Annotation, *Survivability of Action Brought Under Truth in Lending Act*, 53 A.L.R. Fed. 431, 432 (1981) ("The general rule today on survival of statutorily created causes of action is that while actions to enforce a penalty do not survive the death of either party, remedial actions survive even though the damages assessed may technically be called penalties.") (footnotes omitted); see also *Kelly v. Blue Cross & Blue Shield of Rhode Island*, 814 F. Supp. 220, 229 n.12 (D.R.I. 1993) (claim brought under ERISA, "a remedial, rather than penal, statute," survives participant's death); *United States v. $47,409.00 in U.S. Currency*, 810 F. Supp. 919, 921 (N.D. Ohio 1993) (survivability "hinges upon a determination that the cause is remedial or punitive in nature[;] [t]he former causes survive, the latter do not"); *Staub v. Triangle Oil Co.*, 349 A.2d 209, 210 (Del. 1975) (statutory action allowing recovery of possession of leasehold or termination of lease and recovery of treble damages survived death of lessee, allowing recovery to be enforced against landlord by administratrix of estate); *Johnson v. Hinds County*, 524 So. 2d 947, 951–52 (Miss. 1988) (mandatory injunction to enforce compliance with subdivision rules survives death of developer since developer's "personal representatives must be as accountable as was he, no more and no less"); *Thomes v. Porter*, 761 S.W.2d 592, 594 (Tex. Ct. App. 1988) (claim under Texas Deceptive Trade Practices Act survives death of consumer). We adopt this general rule. Therefore, unless the Legislature says otherwise, we will presume that it intended that actions pursued under the remedial terms of protective legislation survive the death of the wrongdoer in order to remedy the injustices done.[3] In this case, we agree with the trial court "that the remedial purposes of the Consumer Fraud Act and Act 250 would be best served by declining to find that the action against the decedent [Andrew Therrien] abated." In the absence of a provision to the contrary, we hold that claims under Act 250 and the Consumer Fraud Act do not abate on the death of the seller of lots subject to the permit. Because we find that the action against Andrew Therrien survives his death and allows substitution of his estate and

---

[3] Survival of any remedial court order would not be barred even if a plaintiff requests both remedial and punitive relief, as the State did here.

defendant as parties following his death, we need not reach the issue of the propriety of the trial court's nunc pro tunc order of August 10, 1992.

Defendant next claims that she cannot be held personally liable for the judgment rendered solely against her husband, nor can she be liable as a properly substituted party because the trial court never had personal jurisdiction over her. She mischaracterizes the court's order. It provides that defendant is substituted as a party in this case "*solely* in her capacity as executrix and as distributee" of the estate of Andrew Therrien. Defendant was not substituted as a party in her own right. As a result, liability attaches to her only by and through her connection to the estate of Andrew Therrien and only to the extent of the assets in that estate.[4] Thus, if estate assets are insufficient to fund the remedial actions ordered, defendant will have no personal responsibility to pay for those actions.

■ We also note that the issue of lack of personal jurisdiction has been raised for the first time on appeal. Defendant's response to the State's motion to substitute defendant in her capacity as executrix and distributee made no mention of lack of personal jurisdiction, and therefore the claim has been waived. See *Myers v. Brown*, 143 Vt. 159, 164–65, 465 A.2d 254, 257 (1983) (defense of lack of personal jurisdiction is waived if not raised in timely manner).

We recognize, as the court stated, "[Andrew] Therrien will have to make a substantial investment to correct all of the defects he has inflicted on the lot owners." That investment has now passed to the defendant as a result of her substitution in her capacity as executrix and distributee. As executrix, defendant will be responsible to pay and discharge "charges" on the "goods, chattels, rights, credits and estate" of the deceased. 14 V.S.A. § 906(2). Although the estate will be complicated by compliance with the judgment order, the duties imposed on defendant are those she assumed when she became executrix of the estate. Without minimizing the effort defendant must make as

---

[4] The lower court did not fully establish the nature and extent of the defendant's interest in the estate, or whether the defendant was the sole devisee under Andrew Therrien's will.

executrix and distributee, we do not find that the trial court's order rises to the level of imposing personal liability on her.

Finally, defendant contests a provision of the court's order with respect to water systems. In the 1974 Act 250 permit for the Salem Heights project, each subdivision lot was "approved for on-site water supply from a drilled or driven well provided that the well is located as shown on the plans and no closer than 100 feet to any subsurface wastewater disposal system." The permit condition did not require Andrew Therrien to warrant the quality of the water, and the deeds given by him specifically disclaimed any such guarantee. In the July 10, 1991 judgment order, however, the court ordered that Therrien obtain approval from the Vermont Agency of Natural Resources as to both quantity and quality for all unapproved wells serving more than one lot. Obtaining approval would require defendant to hire a Vermont-registered professional engineer to prepare plans locating all wells, water lines and water disposal systems to determine whether the wells meet adequate isolation distances from sewage lines. Defendant argues that the court's order is improper because it goes beyond the terms of the Act 250 permit and rewrites the deed obligations.

■ The order of the court has no direct effect on defendant's deed obligations and does not rewrite them. The obligations imposed by the court's order are owed to the State, not the lot purchasers, and are not contractual in nature. Further, the facts found by the trial court show that defendant constructed inadequate water systems that became polluted by improper and failed septic systems. The court was within its remedial powers to make such an order that would bring the wells into compliance with modern health standards as of the date defendant obtains appropriate amendments to the Act 250 permit. See 10 V.S.A. § 8221(b)(2) (court may "order remedial actions to be taken to mitigate hazard to human health or the environment" for Act 250 violations); 9 V.S.A. § 2458(b) ("court is authorized to render any . . . temporary or permanent relief, or both, as may be in the public interest" to remedy Consumer Fraud Act violations).

*Affirmed.*