2003 VT 44

### State of Vermont v. Carolyn Therrien and the Estate of Andrew Therrien v. Gregory Howe

[830 A.2d 28]

No. 02-108

Present: **Dooley, J., Cashman and Zimmerman, D.J., and Allen, C.J. (Ret.) and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed May 16, 2003
Motion for Reargument Denied June 16, 2003

*Leslie C. Pratt,* Montpelier, for Defendants/Third-Party Plaintiffs-Appellants.

*James E. Preston* of *Pierson, Wadhams, Quinn & Yates,* Burlington, for Third-Party Defendant-Appellee.

¶ 1. **Dooley, J.** After her husband, the late Andrew Therrien, was found to have violated Act 250, 10 V.S.A. §§ 6001-6108, and the Consumer Fraud Act, 9 V.S.A. §§ 2451-2480g, in connection with septic and water systems located on his Salem Heights development in the Town of Derby, defendant Carolyn Therrien, executrix of her late husband's estate, brought a third-party claim against attorney Gregory Howe for the alleged negligence of Howe and his late partner in preparing the deeds that defendant claims were the cause of the estate's liability. On Howe's motion, the trial court granted summary judgment in his favor. Defendant appeals, arguing that (1) the trial court erroneously ruled that a client's intentional misconduct constitutes a complete defense to an attorney charged with negligence by the client, and (2) the trial court exceeded the scope of the summary judgment motion before it by granting the motion in part based on arguments not raised or addressed by the parties. We reverse in part, affirm in part, and remand for further proceedings.

¶ 2. In October 1975, Andrew Therrien was issued a land use permit pursuant to Act 250 allowing him to subdivide his 100-acre parcel of land into seventy-seven residential lots. Therrien proceeded to sell most of these lots, but failed to disclose to prospective purchasers the conditions of the land use permit that encumbered the lots. More importantly, Therrien failed to comply with the septic and well water system conditions in the permit. As a result, some residents had little or no water pressure, sewage effluent surfaced and stagnated, and water wells were eventually contaminated with fecal waste.

¶ 3. In March 1983, the State notified Therrien that there were "several serious violations" of the land use permit on his subdivision that needed to be resolved. Thereafter, Therrien agreed in writing to a voluntary compliance schedule. Therrien, however, never complied. In

fact, as the trial court found, Therrien continued to sell lots with permit violations without disclosing the land use permit even after he had signed the voluntary compliance schedule.

¶ 4. The State subsequently brought an action against Therrien in October 1985, alleging violations of Act 250 for his installation of water and septic systems that did not comply with the land use permit, and violations of the Consumer Fraud Act for failing to notify prospective purchasers that the use of the lots was encumbered by conditions contained in the permit.

¶ 5. In July 1991, the trial court issued an opinion citing Therrien for numerous violations of his Act 250 land use permit, specifically finding that Therrien's failure to abide by the terms of his permit and to fulfill the requirements of the voluntary compliance schedule was "willful and intentional." The Act 250 violations included: installation of community water systems not allowed under his permit; installation of improper individual septic systems, community septic systems, and collection sewers; failure to install appropriate septic systems as required by the permit; failure to comply with the isolation distances for water wells and lines from septic systems; failure to show land purchasers the permit and associated documentation; and failure to seek appropriate amendments to the permit. The court also found that Therrien had committed "unfair or deceptive acts and practices" prohibited by the Consumer Fraud Act, 9 V.S.A. § 2453, in selling subdivision lots not in compliance with the land use permit. The court decided not to assess punitive damages and civil penalties, but ordered Therrien "to correct the problems he ha[d] created and ... to obtain the appropriate governmental approvals for the benefit of the people who live in his subdivision." In its order, the court delineated Therrien's specific liabilities, which consisted primarily of performing all work necessary to bring the water and septic systems in the subdivision into compliance with Act 250 and conforming all deeds of the present lot owners to the land use permit.

¶ 6. Since Andrew Therrien had died between the time the trial ended and the date that the decision was issued, the court entered the judgment order substituting Therrien's estate and defendant as executrix as parties. We affirmed this judgment in *State v. Therrien,* 161 Vt. 26, 633 A.2d 272 (1993). The remedial portion of this case remains unresolved and pending.

¶ 7. During the trial, a third-party claim was initiated against Howe, alleging, inter alia, that the negligence of Howe and Howe's late partner, David Lalime, during the course of representing Therrien

rendered Howe liable to indemnify Therrien for any losses which might ensue as a result of the suit against Therrien by the State. Howe's and Lalime's alleged negligence consisted primarily in preparing, and allowing their clients to execute, numerous deeds and property transfer tax returns which they knew, or should have known, were inconsistent with the land use permit. These inconsistencies included the following: many lots were conveyed with fractional rights in community water systems, although the permit allowed only individual on-site wells on these lots; several lots were required by the permit to be served by community waste disposal systems yet were conveyed without any reference in the deeds to such systems; none of the deeds included restrictive covenants imposing permit-required 100-foot isolation distances between the on-site wells and septic systems or requiring that any on-site septic system to be installed by individual owners be installed in accordance with the approved plans; and several property tax returns stated that the transfer covered by the return was in compliance with Act 250 and the subdivision regulations, when in fact this was not the case. In December 2001, in response to a motion by Howe, the trial court granted summary judgment against defendant. Defendant subsequently brought this appeal.

¶ 8. On review of a grant of summary judgment, this Court will apply the same standard used by the trial court. *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999). Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." V.R.C.P. 56(c)(3).

¶ 9. Defendant's primary argument on appeal is that the court erred in finding that intentional misconduct on the part of Therrien constitutes a complete defense to the indemnification for negligence claim against Howe. She contends that this case is unlike any case cited by the State or by the trial court in support of that proposition, in that here the deeds themselves rather than the actions of the client were the "sine qua non from which most, if not all, of the salient findings of wrongdoing in this case flowed." She argues that, were it not for Howe and his partner preparing the deeds inconsistent with the permit requirements, Therrien would not have incurred any liability. Thus, it should be Howe who is liable to the State, regardless

of Therrien's possible willful and intentional conduct in failing to ensure compliance with the permit.

¶ 10. The trial court's July 1991 order contained nine paragraphs imposing specific restrictions and liabilities on Therrien.[1] Without individually examining the specific liabilities imposed, the trial court, in its December 2001 decision granting summary judgment in favor of Howe, held that, regardless of his actions, Howe is automatically shielded from any liability by Therrien's own intentional wrongful conduct. In so ruling, the court adopted the blanket rule that "intentional misconduct on the part of the client constitutes a complete defense to the attorney," citing for direct authority the cases of *Heyman v. Gable, Gotwals, Mock, Schwabe, Kihle, Gaberino*, 1999 OK CIV APP 132, ¶¶ 11-12, 994 P.2d 92 (Okla. Ct. App.), and *Buttitta v. Newell*, 531 N.E.2d 957, 959-60 (Ill. App. Ct. 1988). The court also noted that its holding was supported by the fact that "in Vermont, . . . contribution among joint tortfeasors is barred," citing *Howard v. Spafford*, 132 Vt. 434, 435, 321 A.2d 74, 74-75 (1974), and *Hiltz v. John Deere Indus. Equip. Co.*, 146 Vt. 12, 15, 497 A.2d 748, 751-52 (1985).

¶ 11. We conclude that the trial court's ruling is correct in part and overbroad in part. To explain our ruling, we must separate components of Therrien's violations of Act 250 and the superior court's 1991 remedial order. Before doing so, however, we emphasize that the Act 250 permit made no reference to the deeds of the lots in the Salem Heights development, and thus contained no explicit requirements of provisions in those deeds. While, as we explain, deed provisions were necessary in certain circumstances to comply with the permit, the permit did not specify those circumstances.

¶ 12. Therrien's violations related to both water systems and sewer systems. As to water systems, the Act 250 permit specified that each lot was to have its own well. In fact, Therrien drilled wells that were shared by multiple lots without, except in one instance, seeking a permit amendment. The deeds were apparently consistent with the

---

[1] Paragraph 1 of the order prohibited Therrien from selling any lots still owned by him, or allowing any such lots to be occupied, until the land use permit was complied with. Paragraphs 2 through 6 required him to perform the work necessary to bring the water systems of all of the lots in the subdivision into compliance with the permit. Paragraph 7 required him to conform all deeds of present lot owners to the land use permit and to provide all owners with a copy of the approved plot plan, the engineer's site report, the land use permit, and any appropriate amendments. Paragraph 8 made Therrien liable to the State for its costs and attorney's fees. Paragraph 9 held Therrien liable for costs and attorney's fees in the event that any lot owners obtain a judgment against him for injury or damage arising out of his noncompliance.

actual lot development because they provided, in some instances, rights to water from another lot.

¶ 13. As to the sewer systems, the permit authorized on-site septic systems for some lots and allowed multi-lot waste disposal systems for others. In numerous respects, Therrien built waste disposal systems at variance with the permit requirements. Also in numerous respects, as found in detail by the court in the 1991 decision, the deeds failed to reflect the permit requirements. Many of the lots to be served did not have leaching rights, and those where the systems were located were often not encumbered by that obligation.

¶ 14. As noted above, the 1991 order did not award damages or penalties, but instead required defendant to bring the development into compliance with the permit. With respect to the deeds, Paragraph 7 of the order required defendant to "conform all deeds of present owners of lots in the subdivision" to the Act 250 permit "by any appropriate mechanism including the purchase and conveyance of property rights or the initiation and active pursuit of an action to quiet title." Paragraph 9 provided that if individual lot owners sued and established liability against Therrien for, inter alia, "failure to provide a correct deed to their lot," Therrien would be liable for attorney's fees and costs in such actions.

¶ 15. We start with Therrien's violations that do not involve deed deficiencies or the necessity to conform deeds to the permit — that is, all matters involved in the 1991 order *except for Paragraph 7 and the part of Paragraph 9 involving deeds*.[2] With respect to these violations, we do not have to examine the trial court's rationale in depth. It is sufficient that malpractice liability cannot arise unless the lawyer's negligence is a proximate cause of the claimed harm. See *Roberts v. Chimileski*, 2003 VT 10, ¶ 15, 175 Vt. 480, 820 A.2d 995 (mem.).

¶ 16. Defendant argues that Therrien would not have incurred this liability had it not been for Howe's and his partner's negligence. We find this to be a gross mischaracterization of the cause of the liability, which was in no way related to the quality of the deeds or the property transfer tax returns prepared by Howe and Lalime. First, as the trial court recognized, any failure to comply with the land use permit was Therrien's responsibility, as he was the developer and permittee under

---

[2] The third-party complaint was filed in 1989, well before the 1991 decision. Much of the complaint involved alleged negligent advice given with respect to Therrien's relationship with Jack Lawson, to whom Therrien conveyed lots apparently to escape liability under Act 250. Defendant's brief does not mention these claims, and we assume that they have been abandoned.

the permit. Second, the facts do not show, and Therrien has not argued, that the errors in the deeds somehow prevented him from complying with the permit. Third, as emphasized above, the permit did not require that any provisions be in the deeds to the lots. Thus, although defendant argues that Howe and Lalime negligently failed to include in the deeds the permit requirements that there be 100-foot isolation distances between the on-site wells and septic systems and that any on-site septic system to be installed by individual owners be installed in accordance with the approved plans, such conditions were not required by the permit to be in the deeds. The permit did require that prospective purchasers be shown the permit, but again this requirement was Therrien's responsibility and had nothing to do with the contents of the deeds.

¶ 17. More specifically, the trial court imposed liability on Therrien expressly because of his "willful and intentional" failure to abide by the terms of his land use permit and the voluntary compliance agreement, which created "an unacceptable risk to the health and welfare of [the housing development's] residents." In upholding this decision, we specifically recognized the cause-and-effect relationship involved in this case, and the appropriateness of the remedy that the trial court required:

> Andrew Therrien developed and sold the lots with widespread violations of the Act 250 permit that caused inadequate, failed and unhealthful sewer and water systems. As a result, the purchasers faced difficult and unhealthful living conditions and incurred large expenses in correcting the permit violations. The judgment order of the court requires these conditions to be corrected at the expense of the developer.

*Therrien*, 161 Vt. at 31, 633 A.2d at 275. We see no reason to stray from that finding here. Therrien sold lots that were not in compliance with the permit. Although the deeds were necessary for the completion of each sale, they had nothing to do with the noncompliance. Thus, because his noncompliance with the permit was the sole cause of the health dangers and the remedial costs to the residents, and because Therrien, as the developer and permittee under the land use permit, is responsible for any failure to comply with the permit, it is solely Therrien's responsibility to remedy the situation by bringing the lots into compliance.

¶ 18. Defendant counters that but for Howe's and Lalime's negligence in preparing the deeds and allowing Therrien to execute the deeds, Therrien would not have engaged in the conduct that led to the findings of liability. Defendant's claim is supported only by her naked assertions, and it is flatly contradicted by the findings of the trial court, as stated above. Further, defendant's claim is belied by the record: after being notified by the State of existing permit violations, Therrien was given an opportunity to voluntarily remedy these violations. He agreed in writing to do so but never did, and continued to sell lots that were not in compliance without showing prospective purchasers the required documents. This Court will not hold an attorney liable for negligence when his actions did not proximately cause the damages at issue, see *Estate of Fleming v. Nicholson*, 168 Vt. 495, 497, 724 A.2d 1026, 1028 (1998), nor will we make an attorney the insurer against any losses a client may have sustained based entirely on the client's own intentional wrongful acts. See *Greene v. Morgan, Theeler, Cogley & Petersen*, 1998 SD 16, ¶ 39, 575 N.W.2d 457 (Gilbertson, J., concurring and dissenting).

¶ 19. We similarly find that the liability imposed on Therrien for the State's costs and attorney's fees in enforcing the order is defendant's responsibility and not that of Howe. The trial court found that "[t]he State ha[d] been put to considerable time and expense in prosecuting this case, and ... [thus] the State is entitled to reimbursement for the reasonable value of its services and its expenses in investigating and prosecuting this action." As it was solely Therrien who put the State to considerable time and expense in prosecuting the case through his "willful and intentional" failure to abide by the terms of his land use permit and the voluntary compliance agreement, it is Therrien's responsibility to reimburse the State for these costs that he proximately caused. We therefore uphold the grant of summary judgment on the liability issues related to Paragraphs 2 through 6 and 8.

¶ 20. With respect to the obligation to conform the deeds to the permit under Paragraph 7 and part of Paragraph 9 of the 1991 order, we find the situation to be different. We cannot say based on the summary judgment record that the negligence of the lawyers, if any, was not the proximate cause of the harm. That is, assuming the lawyers were negligent in failing to provide in the deeds leaching rights and rights to disposal systems for lots without their own sewer systems, and obligations to provide these rights for the sewage system host lots, their negligence could be found to be a proximate cause of

the costs of complying with Paragraph 7 or the part of Paragraph 9 involving the deeds.

¶ 21. Although Howe and the trial court cited cases for the proposition that a client cannot shift the liability caused by a wrongful or intentional act onto the lawyer, we find that these are actually proximate cause cases entirely consistent with the above analysis. See *Heyman*, 1999 OK CIV APP 132, at ¶ 12 (rejecting legal malpractice claim on the ground that the damages imposed on the clients were proximately caused by the clients' fraud and not by the attorney); *Buttitta*, 531 N.E.2d at 959-60 (rejecting legal malpractice claim on the ground that a prior adjudication imposing damages on the client for knowingly and intentionally violating a statute collaterally estopped the client from relitigating the cause of the damages under the pretense that the damages were incurred as a result of the attorney's negligence).

¶ 22. We do not find either of the other two theories raised by Howe and the trial court to be sufficient to support summary judgment with respect to the Paragraph 7 or Paragraph 9 deed-related damages. The first is in pari delicto, raised by Howe. Although an attorney whose negligence was not the sole proximate cause of the injury may be shielded from liability by the doctrine of in pari delicto, see *McKinley v. Weidner*, 698 P.2d 983, 985-86 (Or. Ct. App. 1985) (applying in pari delicto doctrine to legal malpractice claim); *Gen. Car & Truck Leasing Sys., Inc. v. Lane & Waterman*, 557 N.W.2d 274, 279, 283 (Iowa 1996) (same), a client's own intentional wrongful conduct does not automatically shield the attorney from all liability. See *Heyman*, 1999 OK CIV APP 132, at ¶ 7 (Stubblefield, J., concurring) ("[A] plaintiff's fraud alone would [not], as a matter of law, relieve a defendant of potential liability for professional negligence, unless, without factual dispute, the fraud was the sole cause of a plaintiff's damages."); 3 R. Mallen & J. Smith, Legal Malpractice § 21.4, at 191 (5th ed. 2000) ("When [the client's] motives involve intentional misconduct by the client, which was *a* cause of the loss, a complete defense *may* be available to the attorney.") (emphasis added). The in pari delicto doctrine serves as a bar against a defendant's liability only where "the plaintiff has been guilty of illegal or fraudulent conduct . . . [and] was equally or more culpable than the defendant or acted with the same or greater knowledge as to the illegality or wrongfulness of the transaction." *Lane & Waterman*, 557 N.W.2d at 279 (internal citations omitted). Thus, the issue of an attorney's liability cannot be

resolved without examining the actions of both the attorney and the client.

¶ 23. The second issue is the rule against contribution among joint tortfeasors, raised by the trial court.[3] See *Howard*, 132 Vt. at 435, 321 A.2d at 74-75; *Matson v. Anctil*, 979 F. Supp. 1031, 1036-37 (D. Vt. 1997). The application of the rule depends upon labeling Therrien a tortfeasor for his failure to abide by his permit, as well as for his violations of the Consumer Fraud Act. We question that label, particularly because the relief imposed was to abide by the conditions of the permit, conditions voluntarily assumed. We note that courts have frequently found that failures to comply with statutory obligations, without more, are not torts for purposes of rules pertaining to contribution among joint tortfeasors. See *Hopkins v. Powers*, 497 N.E.2d 757, 759 (Ill. 1986) (liability imposed under dramshop act was *"sui generis* and exclusive" and therefore nontortious for purposes of contribution among joint tortfeasors statute); *Farren v. N.J. Tpk. Auth.*, 106 A.2d 752, 755 (N.J. Super. Ct. App. Div. 1954) (employer liable under workers' compensation act held not liable in tort; therefore employer and negligent third party were not joint tortfeasors such that third party could seek contribution from employer). Further, although the trial court might have found the consequences of Therrien's violation to be a public nuisance, see *People v. Brockman*, 574 N.E.2d 626, 634 (Ill. 1991) (liability to state for contaminating environment is liability in tort for purposes of

---

[3] Defendant has argued that the trial court, in "amplifying upon Howe's arguments" through the reference to this rule, erred by exceeding the scope of the motion before it, in that this issue was not raised by either party. We recognize the general rule that summary judgment should not be granted on an issue not raised in the summary judgment motion unless the party against whom summary judgment is granted is given full and fair notice and opportunity to respond to the issue prior to the entry of summary judgment. *Versico, Inc. v. Engineered Fabrics Corp.*, 520 S.E.2d 505, 507 (Ga. App. Ct. 1999); see also *Kelly v. Town of Barnard*, 155 Vt. 296, 306, 583 A.2d 614, 620 (1990) (before granting summary judgment, trial court must give "opposing party a reasonable opportunity to show the existence of a fact question"). We doubt, however, that in this context the issue of contribution among joint tortfeasors is sufficiently far afield from the issue of contribution for legal malpractice such that defendant was not fairly notified of its possible impact on the case. Further, "in resolving the parties' motions, the superior court was not restricted to the specific theories relied upon by the parties." *White*, 170 Vt. at 31, 742 A.2d at 738; see also *Nagler v. Admiral Corp.*, 248 F.2d 319, 328 (2d Cir. 1957) (court has duty to grant relief required by facts; parties' legal theories might prove helpful, but do not control court's decision). And finally, defendant is not prejudiced by our resolution of the issue. Thus, we will address this issue here.

contribution statute), that is not the theory on which relief was granted.

¶ 24. We ground our decision, however, on our conclusion that even if Therrien were a tortfeasor, Howe could not be considered a "joint tortfeasor" in the present context. The primary purpose of labeling an action as a "joint tort," or parties as "joint tortfeasors," has traditionally been to trigger joint and several liability among individuals whose actions together produced the plaintiff's injury: "All persons who acted in concert . . . in pursuance of a common design, [are] held liable for the entire result." W. Keeton et al., Prosser and Keeton on the Law of Torts § 46, at 322-23 (5th ed. 1984); see also Matkin v. Smith, 643 So. 2d 949, 951 (Ala. 1994) (joint tortfeasors are held jointly and severally liable for the plaintiff's entire injury). Generally, this label also means that plaintiff can join all tortious actors in one action, and determine which tortfeasor to pursue for recovery. See Zaleskie v. Joyce, 133 Vt. 150, 158, 333 A.2d 110, 115 (1975); Keeton, supra, § 47, at 324-28; see also Black's Law Dictionary 1497 (7th ed. 1999) (defining "joint tortfeasors" as "[t]wo or more tortfeasors who contributed to the claimant's injury and who may be joined as defendants in the same lawsuit"). Thus, the label "joint tortfeasors" serves primarily to define the rights of the plaintiff vis-a-vis potential defendants, see Howard, 132 Vt. at 438, 321 A.2d at 76-77, although as this case demonstrates, there may be other consequences.

¶ 25. In any event, to be a joint tortfeasor, one must be a tortfeasor in relation to the injured party. See Hiltz, 146 Vt. at 15, 497 A.2d at 752 (where there is no joint liability, there is no basis to apply rules of contribution among joint tortfeasors). If we assume that the label fits Therrien, we cannot conclude that it fits Howe. As we set out above, the Act 250 permit imposed no obligation on the lawyers and had no requirements with respect to the deeds. Under Act 250, responsibility to ensure compliance rests solely with the permit applicant/seller. See 10 V.S.A. § 6081(a) ("No person shall sell or offer for sale any interest in any subdivision . . . without a permit."). Furthermore, the Act's definition of "person" expressly states that certain agents — including "a licensed attorney" — are presumed not to be affiliated with the "person" seeking the permit unless conditions indicate more than an agency relationship. Id. § 6001(14)(B)(ii). There is no claim here that the lawyers acted other than as Therrien's agent in drafting the deeds. Thus, we can find no basis to conclude that Howe can be held directly liable to the State under Act 250 for actions that may have contributed to permit violations. Since Howe cannot be liable

to the State, he cannot be a joint tortfeasor with Therrien. See *Muir v. Hadler Real Estate Mgmt. Co.*, 446 N.E.2d 820, 822 (Ohio Ct. App. 1982) (since attorney was not liable to third persons for professional misconduct in representation of landlord in eviction proceeding, attorney was not joint tortfeasor in suit against landlord by tenant for wrongful eviction).

¶ 26. There is a second reason why Howe is not a joint tortfeasor with Therrien. The damage that Howe's negligence, if any, may have caused is different from the damage that the court has found to be caused by Therrien. The failure of the deeds to contain the necessary rights for sewage disposal increases the difficulty and cost of permit compliance, but is not, as we held above, the cause of most of the costs of compliance. The situation here is comparable to one in which a plaintiff is injured by the negligence of another person, and that injury is thereafter aggravated by the medical malpractice of the treating doctor. In the leading case of *Fisher v. Milwaukee Elec. Ry. & Light Co.*, 180 N.W. 269, 270 (Wis. 1920), the Wisconsin Supreme Court held that the initial tortfeasor and the doctor were not "in any sense of the term" joint tortfeasors for purposes of the no-contribution rule, even though they acted together to cause the plaintiff's injury. The *Fisher* rule has been widely followed, see, e.g., *Gertz v. Campbell*, 302 N.E.2d 40, 44 (Ill. 1973); *Pederson v. Eppard*, 231 N.W. 393, 394 (Minn. 1930), and we apply it here.

¶ 27. Rather than contribution, there are well-settled rules that are applicable to defendant's rights vis-a-vis attorney Howe. Defendant's claim is more accurately characterized as a run-of-the-mill legal malpractice action for negligent draftsmanship. See *Fireman's Fund Ins. Co. v. McDonald, Hecht & Solberg*, 36 Cal. Rptr. 2d 424, 432 (Ct. App. 1994) ("[R]egardless whether styled as a claim for subrogation, indemnity or contribution, the gravamen of Insurers' claim was legal malpractice as Insureds' actionable injury was allegedly the result of Law Firm's professional negligence."). As such, the rules that apply to all legal malpractice actions founded on negligence apply here: defendant can recover if she can demonstrate that attorney Howe was negligent and that such negligence was the proximate cause of her injury. See *Bourne v. Lajoie*, 149 Vt. 45, 52-53, 540 A.2d 359, 363-64 (1987) (analyzing legal malpractice claim for negligent draftsmanship in terms of negligence and proximate cause).

¶ 28. The trial court made no findings as to whether Howe and Lalime were negligent in their preparation of the deeds, whether this negligence was a proximate cause of the errors in the deeds, and

whether and to what extent Therrien's actions contributed to these errors.[4] Therefore, we must reverse and remand the Paragraph 7 portion of the liability determination to allow the court to make the appropriate factual findings. See *Crawford v. Johnson*, 489 S.E.2d 552, 555 (Ga. Ct. App. 1997) (upholding summary judgment on claim for contribution or indemnity against attorney to the extent that plaintiff's liability was based on his own fraud and willful conversion, but remanding on other parts of claim that may have been caused by attorney's actions); see also *Carr v. Peerless Ins. Co.*, 168 Vt. 465, 476, 724 A.2d 454, 461 (1998) ("Summary judgment is inappropriate if there is a disputed issue of material fact."); *Berlin Dev. Assocs. v. Dep't of Soc. Welfare*, 142 Vt. 107, 112, 453 A.2d 397, 400-01 (1982) (recognizing propriety of granting partial summary judgment pursuant to V.R.C.P. 56(d) as method for dealing with complex litigation). Further, although liability under Paragraph 9 depends on hitherto unidentified claims by lot owners against Therrien, we must also reverse the grant of summary judgment on this aspect of liability, as it similarly deals with damages arising at least in part from the failure to provide deeds consistent with the permit.

*The grant of summary judgment on the issues of defendant's liability under Paragraphs 7 and 9 of the trial court's July 10, 1991 order is reversed and remanded. The grant of summary judgment is affirmed as to all other issues of liability.*

---

[4] For instance, according to Howe's deposition, both he and Lalime had been instructed by Therrien not to concern themselves with matters related to the land use permit.