2007 VT 107

## State of Vermont v. Stephen W. Ford II

[940 A.2d 687]

No. 06-474

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed September 28, 2007

*Thomas Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellant.

*Charles S. Martin* of *Martin & Associates*, Barre, for Defendant-Appellee.

¶ 1. **Dooley, J.** In this interlocutory appeal, the State of Vermont challenges an order of the Chittenden District Court granting defendant's motion to suppress evidence obtained during a *Terry* frisk. *Terry v. Ohio*, 392 U.S. 1 (1968). The trial court granted defendant's motion, concluding that the officer's decision to bring suspects outside for the purposes of interrogation was not constitutionally reasonable. Defendant argues that the officer overstepped the bounds of the limited search allowed under *Terry*. We reverse and remand.

¶ 2. A police officer arrived at an apartment that defendant was visiting after receiving an anonymous tip that a woman and a bald man had been using illegal drugs while driving on an interstate highway. The informant also provided a description of the car, a license plate number, and an address where the car was parked. After arriving at the named address, the officer found a car matching the one described by the informant and recognized the smell of marijuana emanating from the vehicle. Tracks in the snow led from the vehicle to apartment 6 of the named address. Upon inquiring with the tenant of apartment 6, the officer discovered that four people were inside, the resident at the apartment and a woman and two men, including defendant, who had been in the car. The officer then asked defendant and the others who had been in the car to go outside to the parking lot in front of the building. Defendant and the other occupants of the vehicle did so, after which a second officer arrived on the scene in his cruiser. The second officer questioned defendant and the other occupants about their knowledge of the suspicious smell coming from the vehicle. When defendant asked permission to go inside to plug in his cell phone, one of the officers refused permission.

¶ 3. As the conversation continued, one of the officers noted that the woman identified as the driver of the car had a small folding knife clipped to a pocket at her waist. The officer then asked defendant if he had a knife in his pocket, and defendant admitted that he did. The officer then frisked defendant for weapons and felt the knife, which he removed. Because he also realized that several other, unidentified items were present in the pockets, the officer asked defendant if he had anything else in his pockets. Defendant offered to show the officer what he had in his pockets, but the officer told defendant that the officer would prefer to remove it himself. The officer then searched defendant's pockets, discovering a pill bottle and a baggy full of what the officer

identified as marijuana. Defendant was placed under arrest and subsequently moved to suppress evidence gathered from the search of his pockets.

¶ 4. In reviewing a motion to suppress, we review the trial court's legal conclusions de novo and its findings of fact under a clearly erroneous standard. *State v. Simoneau*, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280 (findings of fact are reviewed for clear error); *State v. Chapman*, 173 Vt. 400, 402, 800 A.2d 446, 448 (2000) (legal conclusions supporting motions to suppress are reviewed de novo). Under both the Vermont and the United States Constitutions, we have recognized that "[a] brief detention, its scope reasonably related to the justification for the stop and inquiry, is permitted in order to investigate the circumstances that provoke suspicion." *State v. Lambert*, 146 Vt. 142, 143, 499 A.2d 761, 762 (1985) (quotation and citation omitted). The threshold issue is "whether the officer had reasonable grounds to suspect that defendant was engaged in any wrongdoing at the time of the encounter." *State v. Theetge*, 171 Vt. 167, 170, 759 A.2d 496, 498 (2000) (quotation and citation omitted). In this context, the "narrowly drawn authority [that] permit[s] a reasonable search for weapons" must be justified by a "reasonably prudent" belief, on the officer's part, that his safety or the safety of others is in danger. *Terry*, 392 U.S. at 27. Although defendant raised several arguments in his motion to suppress, the trial court addressed only the constitutionality of the officer's request that defendant and the other occupants follow him outside. The court evaluated this conduct in light of the "totality of the circumstances," thereby considering the gravity of defendant's potential criminal conduct, the inconvenience or discomfort to the defendant, and the risk defendant may pose to the investigating officers.

¶ 5. Citing our holding in *State v. Chapman*, the trial court stated that it was "not reasonable" to interrogate the defendant outdoors, especially given that the weather was cold and that the offense of marijuana possession was neither violent nor likely to pose a threat to the safety of the public. We disagree. *Chapman*, which addressed when an officer's display of a weapon automatically converts a *Terry* frisk into a full arrest, set forth factors that may be considered in determining whether a *Terry* stop or frisk has become a de facto arrest. *Chapman*, 173 Vt. at 403-04, 800 A.2d at 450. Among those factors were the amount of force used

by police, the need for force, the extent to which the individual's freedom of movement was restrained, the number of agents involved, the duration of the stop, and the strength of any suspicion that the suspect was armed. *Id.* at 403, 800 A.2d at 449 (citing *United States v. Perea*, 986 F.2d 633, 645 (2d Cir. 1993)).

¶ 6. Contrary to the understanding of the trial court, the rule set forth by this Court in *Chapman* has nothing whatever to do with whether a suspect is questioned outdoors in cold weather or the nature of the suspected crime. In *Chapman*, we explained that, in order not to become a full arrest, a frisk must be "brief," "its scope reasonably related to the justification for the stop and inquiry." *Id.* at 402, 800 A.2d at 448-49. The excessive "intrusion" prohibited in *Chapman* is defined primarily by the length and scope of a frisk. See *id.* at 402-03, 800 A.2d at 449. Neither the weather, defendant's wish to be questioned indoors, nor the nature of the offense enter into a constitutional analysis of such a stop under either the United States or Vermont Constitutions, and the trial court erred in concluding otherwise.

¶ 7. Moreover, we do not agree that the officer's request that defendant accompany him outside was constitutionally impermissible. Even if a reasonable person in defendant's position would not have felt free to refuse the officer's "request," we conclude that the officer had at least a reasonable suspicion that "a crime had been committed" that was sufficient to justify the brief stop of the defendant. *State v. Sprague*, 2003 VT 20, ¶ 16, 175 Vt. 123, 824 A.2d 539.

¶ 8. We have thus held that an exit request is constitutionally permissible when it is supported by objective facts that support a reasonable suspicion that the safety of investigating officers or members of the public is at risk or that a crime has been committed. *Id.* Several states have held that the smell of burning marijuana gives investigating officers at least such a reasonable suspicion. *Adams v. State*, 758 S.W.2d 709, 712 (Ark. Ct. App. 1988); cf. *State v. Reha*, 686 N.W.2d 80, 83-84 (Neb. Ct. App. 2004) (when officers observed that defendants were holding cigarette lighters and detected the odor of marijuana, there was probable cause to arrest); *State v. Greenslit*, 151 Vt. 225, 228, 559 A.2d 672, 674 (1989) (when officer detected odor of marijuana and noticed smoke coming from the vehicle, officer had probable cause to arrest). We cannot, therefore, agree with the trial court that the officer's exit request constituted an unconstitutional seizure.

¶ 9. However, in his brief, defendant raises an issue that was raised before but not considered by the trial court, namely, whether the officer exceeded the scope of the "strictly circumscribed" search for weapons that *Terry* authorizes. *Terry*, 392 U.S. at 26. At the outset, we must address whether defendant has properly preserved this issue on appeal. *Fyles v. Schmidt*, 141 Vt. 419, 422, 449 A.2d 962, 965 (1982). Although the record is not entirely clear, we conclude that defendant argued below, as he does here, that the investigating officers acted in violation of the United States Supreme Court's decision in *Minnesota v. Dickerson*, 508 U.S. 366, 379 (1993). Defendant argued before the trial court that the police had "no acceptable basis for the search and seizure of the contents of his pockets." Because defendant properly raised the *Dickerson* issue below, we may now consider it on appeal. See *Fyles*, 141 Vt. at 422, 449 A.2d at 965.

■ ¶ 10. This Court has not yet considered the scope or application of the so-called plain-feel doctrine announced in *Dickerson*. In *Dickerson*, the Supreme Court held that if an officer realizes that an object is not a weapon, he may continue his search for it only if he can immediately identify the object as contraband during the frisk. *Dickerson*, 508 U.S. at 379. If, however, the State can demonstrate that the defendant freely consented to an expanded search, the search may nonetheless be constitutional, even if it exceeds the scope of the frisk authorized by *Terry* and *Dickerson*. See *Sprague*, 2003 VT 20, ¶ 23 (stating that the State bears the burden to show consent was freely given and not coerced by threats or force, or granted only in submission to a claim of lawful authority). An expanded search may also be justified if the officers had probable cause to search defendant independent of the information acquired during the frisk. See *Gabbidon v. State*, 361 S.E.2d 861, 863 (Ga. Ct. App. 1987) (concluding that officer who made investigatory stop had probable cause sufficient to justify a full arrest based on his detection of the odor of marijuana and his observation of a marijuana bag in plain view); *Reha*, 686 N.W.2d at 83-84 (determining that officer who made stop had probable cause to search vehicle and passengers when officer smelled odor of marijuana).

¶ 11. Had the trial court made adequate findings of fact with respect to the *Dickerson* issue, we could decide the legal issue defendant raises. *State v. Pratt*, 2007 VT 68, ¶ 9 n.2, 182 Vt. 165, 932 A.2d 1039 ("Fact-finding is for the trial court and not this

Court."). In discussing the *Dickerson* issue, however, the trial court stated only the following:

> [Based on] a concern of the officers that other weapons might exist[, t]he officers patted down Mr. Ford, who volunteered that he had a knife in his pocket. Officer Rothenberg had him turn around so he could retrieve the knife. While doing so he felt what might be a soft bag of marijuana, and Mr. Ford then voluntarily reached into his own pocket and pulled it out. Further pat down disclosed several pill bottles containing medications.

¶ 12. The trial court made no findings of fact with respect to *Dickerson*'s plain-feel doctrine, mentioning only that the officer felt "what might be a soft bag of marijuana." The court's finding concerning defendant's alleged consent was also inadequate. The trial court's statement that Ford "voluntarily reached into his own pocket" is conclusory. Adequate fact-finding is especially important on this issue because consent is analyzed under a totality-of-the-circumstances test and depends heavily on the facts of each individual case. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *State v. Zaccaro*, 154 Vt. 83, 88, 574 A.2d 1256, 1259 (1990). Because the court did not make adequate findings of fact, we reverse and remand to allow the trier of fact to make appropriate findings. *State v. Therrien*, 2003 VT 44, ¶ 28, 175 Vt. 342, 830 A.2d 28; *Human Rights Comm'n v. Benevolent & Protective Order of Elks of U.S.*, 2003 VT 104, ¶ 3, 176 Vt. 125, 839 A.2d 576.

¶ 13. On remand, the trial court should make specific findings of fact regarding (1) whether the "incriminating character" of the marijuana was "immediately apparent" to the officer; and (2) the circumstances under which defendant agreed to a search of his pockets and whether any of the factors emphasized in *United States v. Mendenhall* were present, see *United States v. Mendenhall*, 446 U.S. 544, 554-55 (1980) (considering, inter alia, whether officers physically touched the defendant or used language suggesting that a defendant was compelled to comply).

*Reversed and remanded.*