Filed 04/19/21

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-00605

Charles Burke v James Baker

# DECISION ON THE MERITS

On April 15, 2021, this court took evidence on Plaintiffs' petition for declaratory judgment in three consolidated cases concerning inmates who have an interest in the Department of Correction's interpretation of its own recently enacted emergency rule. The rule was promulgated to implement the recently adopted reduction of term (good time) statute. 28 V.S.A. § 818. The issue presented is whether the DOC in some fashion must award good time in the final month of the incarcerative portion of a sentence so that the inmate gets the benefit of that good time versus awarding it as an empty gesture after the inmate has been released. The DOC currently interprets its rule to allow good time to accrue in the final month, but it is then awarded only after the inmate's release, when it has no functional purpose. Plaintiffs argue that the plain meaning of the rule requires prorated credit in the final month, which would hasten their release. The State argues that Plaintiffs' claims are not ripe, they failed to exhaust administrative remedies, and the court should defer to the DOC's interpretation of its rule and § 818. Attorney Kelly Green represents the plaintiffs, and Attorney Robert Menzel represents the State.

Plaintiffs have represented that they are not seeking to have the court adjudicate their individual sentences or order any injunctive relief in this case. They merely seek a declaratory judgment as to the meaning of the rule or whether it complies 28 V.S.A. § 818. Thus, the specifics of each plaintiff's sentence and circumstances do not need to be elaborated upon other than to note that each anticipates being released relatively soon. None has fully grieved the issue presented here, and at least with regard to Mr. Burke, it is unlikely the grievance process could produce an outcome which could then be meaningfully reviewed prior to his release.

The court is not persuaded by the State's ripeness and exhaustion arguments. The ripeness argument is that Plaintiffs cannot establish now that they will be entitled to any good time later because whether they might disqualify themselves by committing major disciplinary violations cannot be known in advance. The same logic applies to exhaustion and preservation, which Plaintiffs have not done. Plaintiffs' response to these arguments is that they are merely seeking declaratory relief, which is specifically permitted in these circumstances under 3 V.S.A. § 807, which provides,

The validity or applicability of a rule may be determined in an action for declaratory judgment in the Washington Superior Court if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question.

The court concludes that requiring administrative exhaustion prior to declaratory relief would violate the plain meaning of § 807, which permits declaratory relief "whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question." Similarly, § 807 does not require a fully formed controversy. It applies to threatened interference with a person's rights, and that is the case here. Plaintiffs' claim for declaratory relief is squarely before the court.

The current good-time statute, 28 V.S.A. § 818, was originally enacted in 2019. 2019, No. 56. Act 56 included legislative findings making its remedial nature clear:

(a) The General Assembly finds that:

(1) For nearly 40 years, Vermont had a system of statutory good time that permitted offenders to receive reductions in their sentences for maintaining good behavior and participating in programming while in the custody of the Commissioner of Corrections. This good time system was repealed in 2005.

(2) In 2018, the General Assembly directed the Commissioner of

Corrections, in consultation with the Chief Superior Judge, the Attorney

General, the Executive Director of the Department of Sheriffs and State's Attorneys, and the Defender General, to submit a report (the Report) to the Legislature on the advisability and feasibility of reinstituting a system of earned good time for persons under Department of Corrections supervision. The Report was filed on November 15, 2018.

(3) In the Report, the Commissioner found that:

(A) empirical studies show that earned good time is effective at prison population management, has little to no community impact or effect on public safety, and is perceived by correctional administrators as having a positive impact on facility control;

(B) earned good time reduces incarceration costs by an amount ranging from $1,800.00 to $5,500.00 per inmate, depending on the number of days an inmate's sentence is reduced; and

(C) although research is mixed, studies show that earned good time

can result in a crime rate reduction of 1–3.5 percent.

(4) On the basis of the Report's findings, the Commissioner concluded

that the Department should "reinstitute a program of earned good time for sentenced inmates and individuals on furlough."

(5) In order to reduce the State's prison population by reintegrating

offenders into the community while maintaining public safety, a system of earned good time should be reinstituted in Vermont as soon as possible.

(b) It is the intent of the General Assembly that the earned good time

program established pursuant to 28 V.S.A. § 818:

(1) be a simple and straightforward program that as much as possible

minimizes complexities in implementation and management;

(2) relies on easily ascertainable and objective standards and criteria for

awarding good time rather than subjectivity and the application of discretion by the Department of Corrections; and

(3) recognizes that there is a role in the correctional system for providing inmates with an incentive to reduce their sentences by adhering to Department of Corrections requirements.

2019, No. 56, § 1. The legislation required the DOC to propose a rule that "shall comply with" three standards, as pertinent here: it must apply to virtually all sentenced offenders; and it must award 5 days of good time per month in which the inmate avoids "a major disciplinary rule violation" and complies with programming requirements designed to "prepare offenders for reentry . . . if the offender has received a sentence of greater than one year." *Id*. § 2.

Roughly a year later, the legislature deleted the programming compliance requirement altogether and upped the monthly award from 5 days to 7. 2019, No. 148, § 14 (Adj. Sess.). Thus, under current 28 V.S.A. § 818, virtually all inmates are automatically awarded 7 days of good time so long as there is no major

disciplinary violation and regardless of minor disciplinary violations or noncompliance with programming requirements.

To implement § 818, the DOC promulgated an emergency rule which became effective on January 1, 2021. Emergency Earned Good Time Rule #20-E15. That rule defines "month" to mean "a calendar unit of 28-31 days, proration of which will be determined through the Department of Corrections' Sentence Computation Unit." It defines "proration" to mean "the method used to determine earned good time for eligible offenders who are incarcerated for a portion of the month." The rule includes a chart which allocates prorated days of credit for portions of a month served. For example, for serving 10–18 days, 4 days credit are allowed, and for 19–27 days, 6 days credit are allowed. Permissible prorated credits are 2, 4, 6, and 7 days.

All the rule says about how proration is conducted is this:

> The Department will calculate and award earned good time to offenders, as provided in 28 V.S.A. § 818(b)(2), for each month they meet the criteria listed in Sections III and IV, above. The Department will apply a calculation rubric of proration (see Earned Good Time Prorate Chart, below) that equitably awards earned good time in whole days based on the number of incarcerated whole days for offenders who are incarcerated for less than the whole month (i.e., fewer than 28 days). This rubric applies the 7-day/month formula established by 28 V.S.A. § 818.

Emergency Rule § IV(c). There is no special provision accounting for how proration will work in the last month.

The court understands that the DOC initially started granting credit prospectively at the end of sentences. For example, if an inmate's sentence were to end on the 3d of a month, for example, April, and the inmate was on track for full credit for March, those 7 days of credit would be applied in March in time to ensure that the inmate would be released without losing the benefit of any good time that otherwise would have been awarded but could not be used. The DOC discontinued this practice of end-of-sentence prospective credit in February. Since then, it grants credit only after the good time actually has been earned at the end of the month, leaving inmates who are being released with awards that they cannot use. No changes in the rule occurred. The DOC merely changed its interpretation of the rule, § 818, or both.

The State argues that the court should defer to its rule and its interpretation of 28 V.S.A. § 818. As for deference to an agency's interpretation of a statute, the Vermont Supreme Court has explained as follows:

> [D]eference to an agency's interpretation is appropriate only when a statute is "silent or ambiguous with respect to the specific issue" the agency has considered; otherwise, "the court, as well as the agency, must give effect to the unambiguously expressed intent of

Congress."  Moreover, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."  When an agency's interpretation is not the type of interpretation entitled to *Chevron* deference, we must still grant it some respect, but only "a respect proportional to its 'power to persuade.'"

*Levine v. Wyeth*, 2006 VT 107, ¶ 31, 183 Vt. 76 (citations omitted).

The legislature's intent with Acts 56 and 148 to automatically reduce nearly all offenders' sentences under nearly all circumstances, and eliminate any DOC discretion in that regard, could not be clearer.  The statute commands: "[o]ffenders shall earn a reduction of seven days in the minimum and maximum sentence for each month during which . . . ."  28 V.S.A. § 818(b)(2).  It does not say, "but not in the last month or towards the end of the sentence."  It also is not reasonably interpreted to mean that inmates may earn good time but the DOC may award it in a manner preventing its use.  Section 818 has no such exceptions.  It is plainly intended to shorten sentences.

The court is mindful as well that § 818 is remedial in nature, both by creating an incentive for inmates to not commit major rules violations and by reducing sentences when they behave properly.  "We must apply remedial legislation liberally to accomplish its purposes."  *State v. Therrien*, 161 Vt. 26, 31 (1993).

The last-month problem created by the DOC's current interpretation of its emergency rule violates the legislative mandate in 28 V.S.A. § 818.  The problem applies to the minimum term but the inequity is most pronounced when applied to a maximum or split term because inmates would gain their freedom from incarceration sooner by applying credit concurrently during the last month.  When the DOC grants credit to an inmate who has already been released, the inmate cannot get the benefit of that credit and would have been incarcerated too long, though that would only be apparent after the fact.  This is not what § 818 promises.

It appears to the court that the DOC's first interpretation of its rule solved this problem in some manner, and it is unclear why it changed course.  Inmates scheduled for discharge under any reasonable rule giving them last-month credit would lose that credit if they committed a major rules violation.  Thus, the court cannot see how any would be released with credit that was not earned up to the time of release.  In any event, it is not the place of the court to dictate precisely how the DOC solves this problem.  It has made a good start through the current rule.  The court recognizes these circumstances present a "work in progress" given that the rule remains an emergency rule and that there are possible changes in the statute brewing at the legislature.

For now, the court simply grants the declaratory relief that Plaintiffs request: the DOC's current interpretation of its emergency rule violates 28 V.S.A. § 818 insofar as it prevents inmates from getting the benefit of last-month good time credit.

*Order*

For the foregoing reasons, Plaintiffs' petition for a declaratory judgment is granted. Attorney Green shall submit a form of judgment. V.R.C.P. 58(d).

Robert R. Bent,
Judge

So Ordered