2003 VT 63

**Brenda HEDGES and Harry P. "Skip" Hoblin, II v. John R. DURRANCE, Jr. and Gaston, Durrance and Fairbanks**

[834 A.2d 1]

No. 02-074

¶ 1. July 3, 2003. Plaintiffs Brenda Hedges and Skip Hoblin appeal a decision of the Washington Superior Court granting summary judgment to defendants on plaintiffs' claims of attorney negligence. Plaintiffs claim that the court erred in finding that defendants did not owe plaintiff Hedges a duty of care and that plaintiff Hoblin had suffered no injury. We affirm.

¶ 2. This case arises out of defendant-attorney Durrance's representation of Hoblin. In 1994, Hedges filed for a divorce from Hoblin. Hoblin was represented by defendant Durrance of Gaston, Durrance and Fairbanks, LLP, and Hedges was also represented by her own attorney. Prior to the divorce proceedings, plaintiffs purchased a parcel of land and subdivided it into three lots: the front, middle, and back lots. Only the front lot abutted a road. Plaintiffs Hedges and Hoblin sold the middle lot prior to commencement of the divorce proceedings and reserved a right-of-way between the back and front lots. During the divorce proceedings, plaintiffs agreed to sell the front lot to buyers, the Moriartys. An addendum to the purchase and sale agreement provided that the deed would reserve a right-of-way for plaintiffs Hedges and Hoblin across the front parcel to permit access between the town road and the back lot.

¶ 3. Attorney Durrance drafted the documents in connection with the sale of the front lot to the Moriartys. He sent the documents, including the description of the right-of-way and a copy of a survey

upon which he had hand drawn the brook used to locate the right-of-way, to Hoblin, Hedges's attorney, and the attorney for the Moriartys. Attorney Durrance also attached a letter inviting the attorneys and their clients to review the documents and to suggest any changes or corrections. The description of the right-of-way was based in significant part on the location of the brook as drawn on the survey copy that was enclosed with the other documents. Hedges met with her attorney to review and discuss the draft deed, including the description of the right-of-way, which they approved. Hedges claims, however, that if her attorney, who is not a party to this lawsuit, had shown her the survey sent by attorney Durrance, then she would have known that the brook was drawn incorrectly on the survey, and this would have alerted her to the problem with the right-of-way.

¶ 4. The final divorce decree awarded the back lot to Hedges. Several months later, Hedges and the Moriartys had a dispute over the location of the right-of-way. This prompted Hedges to file an action against the Moriartys. The lawsuit resulted in an order that located the right-of-way as desired by Hedges and awarded damages to the Moriartys for trespass and breach of the warranty deed. Hoblin was not a party to the litigation. Hedges and Hoblin brought suit against attorney Durrance and his law firm to recover damages associated with the suit against the Moriartys. The court dismissed the case on summary judgment, concluding that attorney Durrance and his law firm did not owe a duty to plaintiff Hedges and that Mr. Hoblin had suffered no damages. This appeal followed.

¶ 5. On an appeal from a grant of summary judgment, this Court applies the same standard as that used by the trial court. *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999). Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." V.R.C.P. 56(c)(3).

## I.

¶ 6. A lawsuit against an attorney for negligence generally requires: (1) the existence of an attorney-client relationship which establishes a duty of care; (2) the negligence of the attorney measured by his or her failure to perform in accordance with established standards of skill and care; and (3) that the negligence was the proximate cause of harm to plaintiff. See *Brown v. Kelly*, 140 Vt. 336, 338, 437 A.2d 1103, 1104 (1981) (requiring a showing of proximate cause in addition to negligence of attorney); *Bresette v. Knapp*, 121 Vt. 376, 380, 159 A.2d 329, 332 (1960) (requiring the existence of a professional attorney-client relationship between parties in an action based on attorney negligence). The first requirement is based on the longstanding common-law rule, which we recently reiterated in *Bovee v. Gravel*, 174 Vt. 486, 487, 811 A.2d 137, 139 (2002) (mem.), that an attorney owes a duty of care only to the client and not to third parties. This privity rule ensures that "'attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation.'" *Id.* at 488, 811 A.2d at 140 (quoting *Barcelo v. Elliott*, 923 S.W.2d 575, 578-79 (Tex. 1996)). The policy rationale is especially applicable in situations where, as here, the third party is the client's adversary who is also represented by her own counsel in the proceedings. See 1 R. Mallen & J. Smith, Legal Malpractice § 7.8, at 706 (5th ed. 2000) (explaining that courts have unanimously declined to find a duty of care to client's adversary). There have been exceptions, however, to the rule requiring the existence of a formal, professional attorney-client rela-

tionship. Whether a duty exists between an attorney and a third party is ultimately a question of law. *Petrillo v. Bachenberg*, 655 A.2d 1354, 1357 (N.J. 1995).

¶ 7. Many courts have held lawyers liable to nonclient plaintiffs for negligence where the plaintiff is an intended third-party beneficiary of the attorney-client relationship — in estate-planning and will-drafting cases for example. *Bovee*, 174 Vt. at 488, 811 A.2d at 140. In such situations, a nonclient plaintiff must prove that "the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." *Pelham v. Griesheimer*, 440 N.E.2d 96, 100 (Ill. 1982). The primary purpose of the attorney-client relationship between attorney Durrance and client Hoblin was the representation of Hoblin in his divorce from Hedges, the adverse party. In *Drawdy v. Sapp*, 365 So. 2d 461, 462 (Fla. Dist. Ct. App. 1978), the Florida District Court of Appeal was confronted with a similar case in which a woman brought a suit against her former husband's divorce attorney for negligence, alleging that she was unable to sell her property at a favorable price due to the attorney's negligent preparation of a deed conveying property from the husband to the wife. The appellate court affirmed the trial court's dismissal of the plaintiff's complaint for failure to allege facts giving rise to a legal duty owed by the former husband's attorney to the wife, especially because she was represented by her own counsel in the divorce proceeding. *Id.*; see also *Winters v. Schulman*, 1999 UT App. 119, ¶ 26, 977 P.2d 1218 (affirming trial court's dismissal of former husband's negligence claim against former wife's post-dissolution attorney where the attorney did not owe husband a duty of care because agreement between wife and her attorney concerning legal representation was clearly not intended to benefit husband).

¶ 8. Although plaintiffs concede that Hedges was represented by her own attorney in this "adversarial divorce proceeding," they contend that she is still a third-party beneficiary because Durrance performed "a service which both parties to that proceeding wanted and needed to have performed" by drafting the deed for review by all parties and their attorneys. Essentially, plaintiffs would have us separate the trees from the forest by reviewing defendant Durrance's actions in drafting the deed independently of the larger adversarial context that necessitated defendant's actions in the first place — the divorce. This we will not do.

¶ 9. Plaintiffs encourage this Court to adopt the "balancing of factors" analysis first applied in California.* Such a model, however, is not appropriate where the plaintiff is an adverse party. *Rhode v. Adams*, 1998 MT 73, ¶¶ 17-18, 957 P.2d 1124. The circumstances of attorney Durrance's actions in drafting the deed cannot be separated from the broader adversarial context. A dramatic expansion of the requirements regarding privity and duty of care would have profound consequences. For example, a risk of

---

\* The determination of whether the duty undertaken by an attorney extends to a third person not in privity involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm. *Donal v. Garry*, 97 Cal. Rptr. 191, 192 (Ct. App. 1971) (internal quotation omitted).

divided loyalties could negatively affect an attorney's ability to exercise independent judgment in achieving an advantageous outcome for the client. *Id.*; *Bowman v. John Doe Two*, 704 P.2d 140, 144 (Wash. 1985). Thus, we decline here to extend the duty owed an adversary beyond the general respect, honesty and candor to be afforded all participants in the judicial process.

¶ 10. We similarly reject plaintiffs' claim of negligent misrepresentation. Vermont has adopted the definition of negligent misrepresentation from the Restatement (Second) of Torts:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Limoge v. People's Trust Co.*, 168 Vt. 265, 268-69, 719 A.2d 888, 890 (1998) (quoting Restatement (Second) of Torts § 552(1) (1977)). We have previously held that in order to sustain a cause of action against an attorney for negligent misrepresentation, a third party must demonstrate "a relationship 'so close as to approach that of privity.'" *Bovee*, 174 Vt. at 489, 811 A.2d at 142 (quoting *Petrillo*, 655 A.2d at 1358). Generally, courts have allowed such claims only where an attorney intended to induce reliance by a third party or invited a third party's reliance, for example, in a legal opinion letter written by the attorney so that the client will obtain a loan. See *id.* at 490, 811 A.2d at 142 ("Typically, courts have allowed such

claims where the client solicited an opinion letter from the attorney for the express purpose of inducing reliance by a third party, and the attorney was aware that the third party would rely and intended to induce such reliance."); *Petrillo*, 655 A.2d at 1357-61 (gathering cases where courts have found a duty to third parties based on an attorney's intent to induce reliance or based on situations where an attorney should reasonably foresee that the third party would rely on a legal opinion letter written to induce reliance by others). Plaintiffs have made no such showing here. In a letter attached to a copy of the proposed bill of sale and a copy of the survey, which attorney Durrance sent to plaintiff Hedges's attorney, attorney Durrance wrote, "Neither Skip Hoblin nor [plaintiff Hedges's attorney] have yet reviewed the enclosures so they may have corrections, changes, etc. to recommend." Significantly, regarding the survey, attorney Durrance wrote at the top of the letter, "Note, I have hand drawn in the brook . . . ." Attorney Durrance did not prepare the documents with the intent that plaintiff Hedges rely upon them. He forwarded the documents to her attorney specifically inviting corrections, not reliance. As a matter of law, plaintiffs have not alleged facts which give rise to a duty in this situation.

¶ 11. Even if we were to find such a duty of care existed here, plaintiffs have failed to state a negligent misrepresentation claim that would survive summary judgment. The justifiable reliance element is an objective standard that may be satisfied "when the representation is not obviously false and the truth of the representation is not within the knowledge of, or known by the plaintiffs." *McGee v. Vt. Federal Bank*, 169 Vt. 529, 531, 726 A.2d 42, 45 (1999) (mem.) (noting that this Court has upheld a trial court's instruction based on this interpretation of the justifiable reliance standard). Hedges plainly admits that if her attor-

ney had shown her the survey defendant sent she "would have (a) known that the brook was depicted incorrectly on the survey, (b) communicated her belief to [her attorney], alerting her to the problem with the right-of-way description, and (c) would *not* have closed with the deed as drafted because the right-of-way language was based on an incorrect depiction of the brook's course." Where attorney Durrance directly invited plaintiffs to make corrections to the documents, and Hedges would have noted the necessary changes simply by looking at the documents Durrance sent to Hedges's attorney, Hedges cannot now claim that she was justified in her reliance. Cf. *id.* (holding that plaintiffs' complaint failed to state a cause of action for negligent misrepresentation where plaintiffs failed to allege that their reliance on the defendant's representation was justified and could have verified the information provided by defendant but did not). ·

## II.

¶ 12. The court granted summary judgment for defendants on plaintiff Hoblin's claims because he had not yet "suffered any injury proximately caused by Attorney Durrance." We agree. Plaintiff Hoblin acknowledges that he has not suffered any financial loss, but he argues that he has suffered injury because he faces uncertainty as to whether his divorce case might be reopened one day. An injury based on speculation about uncertain future events is no injury at all. See *Fritzeen v. Gravel*, 2003 VT 54, ¶ 12, 175 Vt. 537, 830 A.2d 49 (mem.) (noting that there is no cause of action for legal malpractice based only on speculative damages); *Bourne v. Lajoie*, 149 Vt. 45, 53, 540 A.2d 359, 364 (1987) (declining to award alleged missed-sale-opportunities damages to the plaintiff in a legal malpractice action where such damages were based on mere speculation and were unsupported by evidence of an actual offer from a prospective purchaser).

Defendants were entitled to summary judgment as a matter of law.

*Affirmed.*