Gradowski v. Kulig, No. 854-12-07 Rdcv (Cohen, J., Feb. 25, 2010)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**
**RUTLAND COUNTY**

|  |  |  |
|---|---|---|
| | ) | |
| **RICHARD C. GRADOWSKI,** | ) | **Rutland Superior Court** |
| | ) | **Docket No. 854-12-07 Rdcv** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PAUL S. KULIG, CHRISTOPHER P.** | ) | |
| **SULLIVAN, and KULIG & SULLIVAN, P.C.,** | ) | |
| | ) | |
| **Defendants** | ) | |

**DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,**
**FILED AUGUST 14, 2009**

This is a legal malpractice action brought by plaintiff Richard Gradowski against

defendant attorneys Paul Kulig and Christopher Sullivan arising out of their

representation of Mr. Gradowski while he served as executor of an estate in Vermont.

Defendants move for summary judgment. Plaintiff is represented by Alison J. Bell, Esq.

Defendants are represented by Robert Reis, Esq.

**Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue of material fact

and the party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). In response to

an appropriate motion, judgment must be rendered "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, ... show that

there is no genuine issue as to any material fact and that any party is entitled to judgment

as a matter of law." V.R.C.P. 56(c)(3). In determining whether a genuine issue of

material fact exists, the court accepts as true allegations made in opposition to the motion

for summary judgment, provided they are supported by evidentiary material. *Robertson v.*

*Mylan Labs*, *Inc.,* 2004 VT 15, ¶ 15, 176 Vt. 356. The nonmoving party then receives the benefit of all reasonable doubts and inferences arising from those facts. *Woolaver v. State*, 2003 VT 71, ¶ 2, 175 Vt. 397. Furthermore, where, as here, "the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact." *Ross v. Times Mirror, Inc.,* 164 Vt. 13, 18 (1995) (internal citations omitted).

## BACKGROUND

Richard Gradowski is an attorney licensed to practice in Connecticut. In 1983, he prepared a will for one Robert H. Brown. In June 1998, Mr. Brown died. At the time of his death, Mr. Brown was a resident of Vermont; thus, his estate had to be probated in Vermont. Pursuant to the will, Mr. Gradowski was named executor of the estate.

Mr. Gradowski retained attorneys Paul Kulig and Christopher Sullivan to represent him in connection with the probate of Mr. Brown's estate in Vermont. Mr. Kulig represented Mr. Gradowski in connection with the estate from June 1998 to February 2004. Mr. Sullivan represented Mr. Gradowski from June 1998 to December 2006.

There was no written agreement among the parties as to the scope of representation, nor were any limitations as to the scope of representation discussed. Mr. Gradowski understood that he had retained Mr. Kulig and Mr. Sullivan to represent him in all aspects of the probate of the estate.

Because of the size of the estate, a United States Estate Tax Return Form 706 was required to be filed within nine months of the date of Mr. Brown's death. This would have been March 4, 1999.

On March 17, 1999, Mr. Gradowski wrote to Mr. Sullivan, stating:

> I am not familiar with the Vermont death taxes, if any, however there is a good likelihood that because of the size of this estate we have to file a Federal 706, which is due nine (9) months from the date of death. I assume that if there are any penalties or interest due on any federal or state death taxes we will be in a position to surcharge the Guardian since it is his delay that has prevented us from filing these returns in a timely manner.

On at least twenty occasions from October 1999 to November 2001, Mr. Gradowski and Mr. Kulig wrote letters to each other regarding the Form 706. The Form 706 was not filed until on or about October 30, 2001.

As a result of the late filing of the Form 706 and related state tax return, the estate was assessed penalties and interest by the IRS in the amount of $50,707.26 and by the Vermont Department of Taxes in the amount of $6,417.48. Mr. Gradowski was ordered to reimburse the beneficiaries of the estate the sum of $57,124.74, plus pre-judgment interest and post-judgment interest on that amount, for a total of more than $100,000 in damages arising out of the late filing of the Form 706 and related state tax return. Mr. Gradowski settled with the beneficiaries in January 2008, agreeing to pay the estate $160,000, which represented the full amount of damages against him, return of his executor's fee, plus pre-judgment and post-judgment interest. The beneficiaries did not seek reimbursement for the penalties and interest from either Mr. Kulig or Mr. Sullivan.

In December 2007, Mr. Gradowski brought the instant action alleging professional negligence against Mr. Kulig and Mr. Sullivan, for (Count 1) their failure to

timely file the Form 706, and (Count 2) their failure to file certain other motions and their failure to advise him regarding certain aspects of his role as executor.

Mr. Kulig and Mr. Sullivan move for summary judgment. As to Count 1, they argue that Mr. Gradowski is precluded from bringing the claim because of issue preclusion and because he is seeking indemnity from alleged joint tortfeasors. As to Count 2, they argue that there are no genuine issues of material fact as to any of the alleged bases for legal malpractice.

## DISCUSSION

### *Issue Preclusion*

Defendants argue that Plaintiff is collaterally estopped from bringing this legal malpractice action because he was found negligent in his duties as executor by both the Rutland Probate Court and Superior Court. The issue of Plaintiff's negligence was the central focus of the Court's findings and he may not relitigate the issue.

"The doctrine of collateral estoppel or issue preclusion bars the subsequent relitigation of an issue which was actually litigated and decided in a prior case between the parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action." *Stevens v. Stearns*, 2003 VT 74, ¶ 12, 175 Vt. 428. The doctrine is designed to "protect the courts and the parties against the burden of relitigation, encourage reliance on judicial decisions, prevent vexatious litigation and decrease the chances of inconsistent adjudication." *Id*.

Under Vermont law, issue preclusion is appropriate when the following elements are met: (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the

issue is the same as that raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair. *Id*. at ¶ 13.

Here, the argument for issue preclusion fails regarding every element except the first. As to the second element, the issue in the instant action is whether Defendants' alleged professional negligence was the proximate cause of Plaintiff's injury. This issue was not resolved by a final judgment on the merits in the prior action. Thus the defendants do not meet the third element, as it is not the same issue raised in the later action. As to the fourth element, there was not a full and fair opportunity by the Plaintiff to litigate the legal malpractice issue in the earlier action. Finally, applying preclusion in the instant action would not be fair. Under the defendants' theory of issue preclusion, any client who relied upon their advice in performing a negligent act for which he or she was found liable, would be estopped from asserting a legal malpractice claim against them. Thus, Defendants' claim for issue preclusion fails.

### *Indemnity from Joint Tortfeasor*

In Vermont there is a rule against contribution among joint tortfeasors. *Howard v. Spafford*, 132 Vt. 434, 435 (1974). The primary purpose of labeling an action as a "joint tort," or parties as "joint tortfeasors," is to trigger joint and several liability among individuals whose actions together produced the plaintiff's injury. *State v. Therrien*, 2003 VT 44, ¶ 24, 175 Vt. 342. Generally, the label of "joint tortfeasor" also means that a plaintiff can join all tortious actors in one action, and determine which tortfeasor to pursue for recovery. *Id*. To be a joint tortfeasor, one must be a tortfeasor in relation to the injured party. *Id*. at ¶ 25. Where there is no joint liability, there is no basis to apply the

rules of contribution among joint tortfeasors. *Therrien*, 2003 VT 44, ¶ 25 (citing *Hiltz v. John Deere Indus. Esquip. Co.*, 146 Vt. 12, 15 (1985)).

In this case, for Defendants to have been joint tortfeasors, they must have been tortfeasors in relation to the beneficiaries of the estate. A lawsuit against an attorney for negligence generally requires: (1) the existence of an attorney-client relationship which establishes a duty of care; (2) the negligence of the attorney measured by his or her failure to perform in accordance with established standards of skill and care; and (3) that the negligence was the proximate cause of harm to plaintiff. *Hedges v. Durrance*, 2003 VT 63, ¶ 6, 175 Vt. 588 (mem.) (citing *Brown v. Kelly*, 140 Vt. 336, 338 (1981); *Bresette v. Knapp*, 121 Vt. 376, 380 (1960)).

Thus, for the defendants to have been joint tortfeasors the crucial determination is whether an attorney-client relationship existed between the defendants, as attorneys for the executor, and the beneficiaries of the estate such that Defendants owed the beneficiaries a duty. "The longstanding common law rule is that an attorney owes a duty of care only to the client, not to third parties who claim to have been damaged by the attorney's negligent representation." *Bovee v. Gravel*, 174 Vt. 486, 487 (2002).

"The requirement of attorney-client privity to maintain a malpractice action ensures that attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation." *Id*. at 488. The Vermont Supreme Court has recognized that other courts have relaxed the privity rule in limited circumstances—most often in the estate-planning and will-drafting context—where it can be shown that the client's purpose in retaining the attorney was to directly benefit a third party. *Id*.; *Hedges*, 2003 VT 63, ¶ 7.

Here, the primary purpose of the attorney-client relationship between the defendant-attorneys and client Gradowski was the representation of Gradowski in his role as executor of the estate. "In our law an executor is a person, or corporation empowered to discharge the duties of a fiduciary, appointed as such by the testator in his will." *In re Watkins' Estate*, 113 Vt. 126, 133 (1943). The executor has the duties of collecting the assets of the estate, paying its debts, and distributing the residue to the beneficiaries of the estate. *In re Wright*, 131 Vt. 473, 491 (1973).

Recognizing a lack of privity between the beneficiaries and themselves, the defendants encourage this Court to apply the "balancing of factors" analysis first applied in California, and then noted by the Vermont Supreme Court in *Hedges*. See *Hedges*, 2003 VT 63, ¶ 9. However, this Court declines to apply the California analysis for the same reason the *Hedges* Court declined—such a model is not appropriate where the beneficiaries and the executor (whom the defendant-attorneys represented) were adverse parties. See *Id*.

The executor's duty is to "serve the interests of the estate, not to promote the objectives of one claimant over another." *Ferguson v. Cramer*, 695 A.2d 603, 607 (Md. Ct. Spec. App. 1997). There is a "potentially adversarial relationship that exists between an executor's interest in administering the estate and the interests of the beneficiaries of the estate." *Hopkins v. Akins*, 637 A.2d 424, 428 (D.C. 1993). Thus, the circumstances of the defendant-attorneys representation of Mr. Gradowski in his role as executor of the estate "cannot be separated from the broader adversarial context." See *Hedges*, 2003 VT 63, ¶ 9.

As the Supreme Court reasoned in *Hedges*, "[a] dramatic expansion of the requirements regarding privity and duty of care would have profound consequences. For example, a risk of divided loyalties could negatively affect an attorney's ability to exercise independent judgment in achieving an advantageous outcome for the client." *Hedges*, 2003 VT 63, ¶ 9.

In step with this reasoning, other states have observed that allowing a beneficiary to sue the personal representative's attorney could subject the attorney to an impermissible conflict of interest when the interests of the personal representative, acting on behalf of the estate, conflict with the interests of the beneficiary. *Ferguson v. Cramer*, 695 A.2d 603, 607 (Md. Ct. Spec. App. 1997); *Goldberg v. Frye*, 266 Cal.Rptr. 483, 489 (Cal. Ct. App. 1990); *Hopkins v. Akins*, 637 A.2d 424, 428 (D.C. 1993); *Spinner v. Nutt*, 631 N.E.2d 542, 544-45 (Mass. 1994); *Trask v. Butler*, 872 P.2d 1080, 1085 (Wash. 1994) (en banc).

In *Goldberger v. Kaplan, Strangis & Kaplan, P.A.,* 534 N.W.2d 734, 739 (Minn. Ct. App. 1995), the Minnesota Court of Appeals opined: "It is the potential for conflict that makes direct suit by the beneficiary unacceptable; the fact that the interests of the personal representative and the beneficiary may be aligned in a particular case does not render the suit acceptable." In regards to how a beneficiary who had been harmed by legal malpractice could proceed with a claim, the *Goldberger* court explained that the beneficiaries can bring an action against the personal representative for breach of fiduciary duties. If the representative's attorney negligently advised him, the attorney may be liable to the personal representative for any legal malpractice. *Id.* (citing *Trask*, 872 P.2d at 1085). This is exactly the scenario which occurred in the instant case.

Thus, the beneficiaries could not have brought a legal malpractice claim against the defendants because the defendants did not owe them a duty in their role as the executor's attorneys. As such, plaintiff Gradowski and defendants Kulig and Sullivan were not joint tortfeasors. Plaintiff's claim for legal malpractice is not barred by the rule against contribution among joint tortfeasors.

*Count 2*

Defendants argue that no genuine issue of material fact exists as to each of the five bases for alleged legal malpractice that compose Count 2. These bases include Defendants' failure to dispute the amount of penalties assessed by the IRS; failure to oppose a motion for pre-judgment interest; failure to advise Plaintiff to itemize his time as executor; failure to advise Plaintiff to notify his malpractice carrier; and failure to advise Plaintiff to hire different counsel.

There are disputed questions of material fact as to each of these bases for legal malpractice. Each bases will require expert testimony at trial to establish the appropriate standard of care. Thus, there are genuine issues of material fact and Defendants are not entitled to judgment as a matter of law.

## ORDER

Defendants' Motion for Summary Judgment, filed August 14, 2009, is DENIED.

Dated at Rutland, Vermont this _____ day of _____, 2010.

_____
Hon. William Cohen
Superior Court Judge