*Felis v. Downs Rachlin Martin, PLLC*, No. 848-8-14 Cncv (Toor, J., Jan. 22, 2015).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| KENNETH P. FELIS<br>  Plaintiff<br><br>  v.<br><br><br>DOWNS RACHLIN MARTIN, PLLC, and<br>GALLAGHER, FLYNN & COMPANY, LLP<br>  Defendants | Docket No. 848-8-14 Cncv |

RULING ON MOTIONS TO DISMISS AND MOTION TO STRIKE

Plaintiff Felis went through a hotly contested and lengthy divorce in which Defendants in this case worked for his ex-wife as her legal counsel and business valuation experts. He has brought this case alleging that Defendants conspired to build their fees, to harass Felis, and to drive up his attorney's fees. Each defendant has moved to dismiss. In addition, Defendant Gallagher Flynn has moved to strike under 12 V.S.A. § 1041. The court held oral argument on the motions on January 12. Jennifer Colin, Esq. represents Felis; Eric Miller and Kevin Lumpkin, Esqs. represent Downs Rachlin; Matthew Byrne and David Boyd, Esqs. represent Gallagher Flynn.

Relevant Allegations

Felis and his ex-wife were engaged in a litigious divorce for seven years, one involving two trips to the Supreme Court. Downs Rachlin Martin, PLLC (Downs Rachlin) represented his ex-wife, Vicki Felis. Gallagher, Flynn (Gallagher Flynn) was hired to do a business valuation. The complaint here alleges that Attorney Debra Schoenberg at Downs Rachlin handled the case

for Vicki from 2008 until 2011, and that Mr. Flynn of Gallagher Flynn testified that she was his largest referral source in terms of dollar volume. The complaint alleges that Schoenberg, on behalf of Downs Rachlin, engaged in unnecessary discovery and filed unjustified motions. It alleges that Downs Rachlin did so with the purpose of increasing its fees and harassing and "injuring" Felis. It also alleges that Gallagher Flynn provided expert testimony for similar purposes. Felis alleges that he incurred substantial costs in time and attorney's fees in providing the discovery and defending the motions. Judge Pearson at one point commented that some of this litigation was "wholly unnecessary, creates needless additional work for the court, and simply drives expenses higher, with no real gain for the client(s)."

Felis also claims that Downs Rachlin and Gallagher Flynn knowingly presented inaccurate evidence at trial, much of which was rejected by the court. Judge Pearson wrote that the Gallagher Flynn witness "may have lost his way and abandoned his usual common sense, good business judgment, and professional expertise" in the case, because much of his testimony was speculative, not credible, and defied common sense.

The complaint alleges that Downs Rachlin billed Mrs. Felis over $1,000,000 in attorney's fees, and that Gallagher billed her approximately $248,000. Judge Pearson, unsurprisingly, found the fees to be unreasonable, and awarded a total of only $500,000 for attorney's fees and expenses.[1] Felis also alleges that Downs Rachlin presented evidence that Vicki would be responsible for the full fees, but that Downs Rachlin has actually forgiven over $500,000 of those fees. He alleges that this constituted the submission of false evidence to the court to improperly influence the outcome of the trial and the award of assets.

Downs Rachlin attaches to its motion numerous filings and rulings from the divorce action. As it notes, on a motion to dismiss the court may consider documents referenced in the

---

[1] About $200,000 of this total had been advanced at earlier stages of the case by court order.

complaint. Downs Rachlin also asks the court to take judicial notice of some of the documents, and Felis does not object. Those documents show that Felis's claims of overbilling and over-litigating were addressed by the divorce court.

DOWNS RACHLIN'S MOTION TO DISMISS

Plaintiff's legal claim against Downs Rachlin is that the firm engaged in fraud, damaging him. The substance of the fraud is alleged to be the intentional increasing of litigation, making baseless motions, and the submission of false evidence to the divorce court.

Downs Rachlin responds that it owed no duty to Felis, that Felis has not alleged the necessary elements of a claim of fraud, that the litigation privilege applies to counsel's actions in the divorce proceeding, and that collateral estoppel applies because these issues have been addressed in the prior case.

1.  Duty to Opposing Litigant

Downs Rachlin first argues that it owed no duty to Felis on which he can base any claim against it. The firm is correct that under Vermont law, an attorney owes a duty of care to his or her client, but not to the opposing party. Hedges v. Durrance, 2003 VT 63, ¶ 6, 175 Vt. 588 (mem.).[2] Thus, an opposing party in a lawsuit cannot assert a claim of negligence or breach of fiduciary duty against a lawyer.[3] In response to the motion, however, Felis suggests that he is asserting a claim that Downs Rachlin breached a fiduciary duty not to him, but *to the marital estate*: "this claim raises the issue of whether counsel . . . has fiduciary duties relative to the pool

---

[2] Although only a memorandum decision, Hedges notes that it is a "longstanding common law rule" that an attorney owes a duty of care only to the client. 2003 VT 63, ¶ 6.

[3] The complaint contains only a fraud claim, not one of negligence or breach of fiduciary duty. However, in his briefing on the motion Felis argues that he asserts a fiduciary duty claim, and both sides have briefed the issue. Thus, the court addresses the issue now rather than requiring Felis to first amend the complaint.

of finite resources jointly owned by both litigants from which attorney's fees for both parties were to be paid." Opp'n at 6.

Felis cites no legal authority to support this theory, and the court rejects it. Virtually every divorce in which lawyers are involved will have fees being paid from joint assets, as all assets of the parties are considered marital assets. 15 V.S.A. § 751. If Felis's theory were adopted, it would mean that every litigant in every divorce case might have a claim against opposing counsel for breach of duty. This is directly contrary to the current state of the law: "[A]n attorney owes a duty of care only to the client and not to third parties. This privity rule ensures that 'attorneys may in all cases zealously represent their clients without the threat of suit from third parties . . . .'" Hedges, 2003 VT 63, ¶ 6 (citing Bovee v. Gravel, 174 Vt. 486, 488 (2002) (mem.)). The rule "applies with particular force where, as here, the third party is the client's adversary who is also represented by [his] own counsel in the proceedings." Eaton v. Cleary, Shahi & Aicher, Att'ys, No. 2013-172, 2013 WL 9057068, at *2 (Vt. Oct. Term, 2013) (internal quotation marks omitted) (citing Hedges, 2003 VT 63, ¶ 6). Thus, to the extent that Felis attempts to assert a claim for breach of fiduciary duty, it is dismissed.

## 2. Fraud

Downs Rachlin next argues that the complaint fails to allege the necessary elements of a fraud claim. To prove common law fraud, a party must show "(1) intentional misrepresentation of a material fact; (2) that was known to be false when made; (3) that was not open to the defrauded party's knowledge; (4) that the defrauded party acts in reliance on that fact; and (5) is thereby harmed." Estate of Alden v. Dee, 2011 VT 64, ¶ 32, 190 Vt. 401. The complaint does not allege that Downs Rachlin directed any false statements to Felis (as opposed to the court), that he was unaware that they were false, or that he relied upon any such false statements.

4

In his opposition to the motion, Felis argues that he had no way of knowing until the end of the case about the fee-building strategy Downs Rachlin was using. However, this is directly contrary to the allegations of the complaint, including the following: "The red fee-building flag went up early in DRM's handling of the case" (Compl. ¶ 11); "DRM demonstrated from the outset of its representation of Ms. Felis that its litigation strategy and plan was to build its fees and harass and injure Plaintiff" (Compl. ¶ 12). His counsel also argued at the motion hearing that Felis relied upon the allegedly false statements by his "participation in" the divorce litigation. This is not reliance. He was "participating in" the divorce because he filed it. It is inherent in litigation that the two sides present opposing claims, and neither side "relies upon" the other's competing claims. There are just no allegations in the complaint that any statements made in the court proceedings induced Felis to act to his detriment in reliance upon them. The complaint fails to make out a claim for fraud.

### 3. Litigation Privilege and Collateral Estoppel

Because the court finds that the complaint fails to state a valid claim for fraud or breach of fiduciary duty, it does not reach the question of whether the litigation privilege or collateral estoppel would apply here.

### GALLAGHER FLYNN'S MOTIONS TO STRIKE AND DISMISS

The claim against Gallagher Flynn is that it colluded with Downs Rachlin to run up fees, including providing false testimony at trial. Gallagher Flynn (1) moves to dismiss on the ground of witness immunity, failure to state a fraud claim, and collateral estoppel, and (2) moves to strike the complaint under 12 V.S.A. § 1041, which generally protects statements made in judicial proceedings from being the basis for a lawsuit.

5

1.  Motion to Dismiss

    a.  Witness Immunity

Gallagher Flynn argues that the doctrine of witness immunity (also referred to as testimonial immunity) requires dismissal here. This doctrine bars suit against testifying witnesses for harm based upon their testimony, even false testimony. O'Connor v. Donovan, 2012 VT 27, ¶ 26, 191 Vt. 412; Politi v. Tyler, 170 Vt. 428, 433–34 (2000). Felis responds that his claim is of a "collusive scheme to defraud the marital estate by misusing the litigation process as a tool to do so, and GFC's testimony is but one evidentiary component of the broader scheme." Opp'n at 4. Thus, he argues, the doctrine of immunity does not apply.

Most of the claims asserted against Gallagher Flynn do relate to testimony in court (whether oral or written). It is irrelevant whether the testimony was intentionally false, as Felis alleges. The point of witness immunity is that even knowingly false testimony is protected. *See, e.g.*, Politi, 170 Vt. at 434; Briscoe v. LaHue, 460 U.S. 325, 345 (1983). However, the complaint alleges more than merely false testimony. First, it alleges some limited acts by Gallagher Flynn beyond just testimony, such as preparation of false business asset valuations and having Mr. Flynn unnecessarily attend a deposition. Compl. ¶¶ 30, 56. Gallagher Flynn argues that these acts were preliminary to testimony and therefore protected, citing Deatherage v. Examining Bd. of Psychology, 948 P. 2d 828, 830 (Wash. 1997). However, the Vermont case on point limits the witness immunity doctrine to actual testimony. Politi, 170 Vt. at 434 (the doctrine does not apply to "nontestimonial acts outside a judicial proceeding"). Thus, those limited aspects of Plaintiff's claims are not barred by immunity.

As Felis's counsel emphasized at oral argument, the complaint also alleges that the focus of Felis's claim is not the testimony itself, but a *conspiracy* to defraud him by presenting false

evidence. Vermont does not appear to have addressed the issue. Whether such a conspiracy is protected by witness immunity is an issue that for a time divided other courts. *Compare* San Filippo v. U.S. Trust Co. of New York, Inc., 737 F.2d 246, 255 (2d Cir. 1984) (immunity does not "cover extra-judicial conspiracies between witnesses and the prosecutor to give false testimony") *with* Mobray v. Cameron Cnty., Tex., 274 F. 3d 269, 277 (5th Cir. 2001) (noting that most federal circuits—other than the Second—had held that witness immunity did immunize pretrial conspiracies to commit perjury). However, the United States Supreme Court in 2012 held that witness immunity does extend to conspiracies between witnesses and criminal prosecutors. Rehberg v. Paulk, 132 S. Ct. 1497, 1506-7 (2012). The rationale of the Court was that otherwise the rule of witness immunity could "be circumvented by claiming that a . . . witness conspired to present false testimony," making the immunity doctrine "easily frustrated." Id. The Second Circuit just this month acknowledged that Rehberg abrogated its prior holding to the contrary. Coggins v. Buonora, No. 13-4635, 2015 WL 148982, at *2 n.3 (2d Cir. Jan. 13, 2015). Although Rehberg involved a witness in a criminal rather than civil case, the same rationale applies in both arenas. The court concludes that witness immunity extends to claims of conspiracies to present false testimony. The court obviously does not endorse such actions, but the remedies must be found elsewhere. *See, e.g*., In re O'Brien, 93 Vt. 194, 205 (1919) (per curiam) (lawyer disbarred for conspiring to submit false evidence).

## b. Fraud

Gallagher Flynn asserts essentially the same arguments as Downs Rachlin with regard to the claim of fraud in this case. Felis offers essentially the same response as he did to Downs Rachlin. To the extent that Felis is arguing that Gallagher Flynn owed a "duty to speak honestly to the court," the court does not find that to be a basis for a fraud claim by Felis. To the extent

that he is arguing that Gallagher Flynn owed him some duty as an opposing party in the litigation, he cites no legal support for the claim, and the court rejects it as unfounded. The court finds no fiduciary duty running to Felis that would create a duty to disclose.

The court reaches the same conclusion as it did above: the complaint fails to allege any misrepresentations made to Felis by Gallagher Flynn upon which he relied. Thus, despite the analysis above finding that minor portions of the complaint withstand the testimonial immunity doctrine, the entire complaint must be dismissed for failure to state a claim of fraud.

### c. Collateral Estoppel

Because the court has granted the motion to dismiss on other grounds, it does not reach the issue of collateral estoppel.

### 2. Motion to Strike

Because the court has granted the motion to dismiss on other grounds, the court finds that the motion to strike is moot.[4]

### Order

Downs Rachlin's motion to dismiss is granted. Gallagher Flynn's motion to dismiss is granted. The motion to strike is moot.

Dated at Burlington this 22nd day of January, 2015.

_____
Helen M. Toor
Superior Court Judge

---

[4] Although Gallagher Flynn might wish to have the matter addressed so as to obtain its attorney's fees if it were successful, the statute would require an evidentiary hearing, and additional expert and legal fees for both sides. Relitigating the complicated valuation issues from the divorce to decide whether there was a reasonable basis for Gallagher Flynn's opinions, thereby running up even more fees for everyone, is not a useful exercise under the circumstances. "Enough already."

8