Vermont Superior Court
Filed 07/27/21
Washington Unit

VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 235-4-18 Wncv

| The Cincinnati Insurance vs. Plouffe et al |
| --- |

## ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment MotionName        for Summary Judgment
Motion#        4 (Motion: 4)
Filer:        Andrew M. Gannon
Filed Date:        January 05, 2021

The motion is GRANTED.

*The Cincinnati Insurance Company v. Plouffe*, No. 235-4-18 Wncv

The Plouffes' Motion for Summary Judgment and Motion for Sanctions

Cincinnati's Motion to Exclude the Plouffes' Expert

After compensating its insured, Landlord Maple Street Stable, LLC, for substantial flood damage to its commercial and residential building in Waterbury Center, Insurer The Cincinnati Insurance Company brought this subrogation action against Jason and Jenna Plouffe, the tenants in possession of the residential premises when the flooding occurred. The source of the flooding was a bathroom faucet running full blast while the Plouffes were out of town for a few days. Virtually nothing is known about how the faucet came to be running full blast and caused the flood. Cincinnati claims that the Plouffes are liable in negligence and under the terms of the lease agreement for all resulting damage. The Plouffes have filed a motion for summary judgment arguing that (1) the economic loss rule bars Cincinnati's claim insofar as it is framed under negligence law; (2) the Plouffes have no liability under the contract's "neglect" standard because the faucet evidently malfunctioned, which was a Landlord responsibility; and (3) the spoliation doctrine counsels in favor of a remedy favoring the Plouffes because agents of Landlord or Cincinnati destroyed the faucet, sink, and drainage assembly before the Plouffes had a fair chance to have an expert examine it. Cincinnati opposes summary judgment and has filed a motion to exclude the Plouffes' engineer expert as disclosed out of time.

Entry Regarding Motion
235-4-18 Wncv The Cincinnati Insurance vs. Plouffe et al

Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Rule 56(c)(1), shows that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. V.R.C.P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994). The court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375.

*Facts*

As far as the record goes, the Plouffes were out of town for several days to attend a funeral. Upon returning and entering the leased premises, they noticed indications of severe flooding. Mr. Plouffe quickly went to the bathroom on the second floor where he found the sink faucet running full blast. He turned the faucet off, and it stayed off. There is no evidence that the Plouffes or Landlord had ever had any significant problem with this faucet in the past.

Landlord's principal, Lilli Biedermann, recorded this after learning of the flood and then speaking with Mr. Plouffe:

> l, Lilli Biedermann, immediately called Jason on his cell phone and reached him. Jason said the flooding is bad, the apartment is in bad shape but after turning off the bathroom sink faucet, the water flow has stopped. By Jason's report during the call, the cold water was running on full and the sink was "empty" when he discovered the source of the flooding. Jason made the comment that it was "weird" that the sink was empty.
>
> .   .   .
>
> Jason made a follow up comment to me near the end of the call stating, "You know how sometimes you leave the water on a bit?" l said, "Yes." Jason followed by making a conjecture that possibly this had happened in this case?

By leaving the water on "a bit," the court understands this statement to imply inadvertent dripping or a trickle. That "conjecture" is the only "evidence" that Mr. Plouffe left the water running at all. There is no allegation that either of the Plouffes left the faucet running full blast, inadvertently or intentionally,

Entry Regarding Motion
235-4-18 Wncv The Cincinnati Insurance vs. Plouffe et al

when they left town.

Cincinnati's expert plumber, Carl Baker, briefly examined the faucet before the whole assembly was removed and destroyed. He found that it turned on and off as it ought to. In his view, the faucet would not have simply turned itself on had it been turned completely off. He speculates that it is possible that if it had been left dripping or at a trickle, then natural water pressure could have caused the valve to open completely. This would be, however, an extremely rare event. It is something he experienced with an outdoor faucet but had never seen with an indoor faucet. There is no indication, however, that he examined the valve to determine whether it actually might have been susceptible to such a thing. Then, he further speculates that if the faucet were running full blast, and if the drainage were slow or partially clogged, then the sink eventually could overflow. He did not, however, conduct any examination to determine whether there in fact was any such clog or slow drainage, and no water apparently backed up when he left it running for a few minutes.

Mr. Baker offered no opinion as to why the overflow drain in the sink, if one existed, would not have prevented the sink from overflowing. He also offered no opinion as to how a sink can overflow if it was, as Mr. Plouffe apparently reported to Ms. Biedermann, empty while the faucet was running—i.e., not overflowing, implying that the water was escaping somewhere else.

In short, Mr. Baker appears to have only taken a quick look at the faucet. He does not appear to have examined it for the purpose of determining exactly what happened to result in the flood.

The timing is unclear but either shortly before or after the Plouffes and their insurer received notice that Cincinnati may be seeking to enforce its subrogation rights, the sink, faucet, and drainage assembly was removed from the premises and destroyed. No one ever examined it to determine with any precision how the flooding occurred.

There is no dispute that the water causing the flood damage originated from the bathroom faucet running full blast for some time while the Plouffes were out of town. There is no allegation that either of the Plouffes left the faucet in that condition, running full blast. For purposes of this decision only, the court assumes that there is a triable issue as to whether Mr. Plouffe inadvertently left the faucet dripping or at a trickle.

*Analysis*

The Plouffes argue that Cincinnati's claim should be framed under the lease agreement

Entry Regarding Motion
235-4-18 Wncv The Cincinnati Insurance vs. Plouffe et al

Page 3 of 5

(contract law) rather than as a negligence claim (tort law). The lease agreement imposes a "neglect" standard on the Plouffes' liability. There may be more nuanced scenarios in which a contractual neglect standard produces different outcomes in a case such as this than ordinary negligence law would. However, the parties do not delineate any such differences here, and the court perceives none. Neither would impose liability for unforeseeable consequences. See *Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 27, 197 Vt. 176 ("Under our common law [of negligence], 'the degree of care that a reasonably prudent person would exercise, and thus the scope of the legal duty of ordinary care, is determined by the foreseeability of the consequences of an individual's acts or omissions.'" (citation omitted)); Restatement (Second) of Contracts § 351(a) ("Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made."). Because a breach of the lease agreement is subject to a "neglect" standard, foreseeability also would be central to whether a breach had occurred in the first place. And neither negligence nor the lease's neglect standard would tolerate speculation. See *Hedges v. Durrance*, 2003 VT 63, ¶ 12, 175 Vt. 588 ("An injury based on speculation . . . is no injury at all."). The court thus declines to resolve this matter and instead focuses on the Plouffes' principal argument, that the faucet must have somehow malfunctioned and the Plouffes are not responsible for that. Or, in other words, a major flood was not a foreseeable consequence of leaving an indoor faucet dripping.

Cincinnati's theory is that Mr. Plouffe left the water at a drip or trickle. Enabled by the drip or trickle, natural water pressure eventually forced open the valve, causing water to flow through the faucet at full blast. The sink's drainage was clogged or slow, eventually causing the sink to back up and overflow.

A major flood is simply not a reasonably foreseeable risk of harm from leaving an ordinary bathroom faucet dripping or at a trickle, and nothing in the record provides any basis for an inference that either of the Plouffes knew or had any reason to know that this particular faucet had any such propensity. This is sufficient to warrant summary judgment to the Plouffes.

However, Cincinnati's claim is impermissibly speculative as well. First, there is hardly an allegation that the Plouffs left the water running at all. There certainly is no allegation that they left it gushing. Mr. Baker indicates that he is aware of an outdoor faucet that was left dripping, and water pressure then forced the valve to fully open. He offers nothing more than speculation that this may have happened in this case. Moreover, that theory, according to him, also requires that the drainage was slowed or clogged. While he opines that bathroom drains often are, he offers no opinion that this one was. Nor is there any other evidence of that fact. Thus, even if the Plouffs had been negligent or neglectful in some respect, the causal chain leading to Cincinnati's damages remains wholly speculative. This also is sufficient to warrant summary judgment to the Plouffes.

Although not necessary to resolve given that the Plouffes are entitled to summary judgment

Entry Regarding Motion
235-4-18 Wncv The Cincinnati Insurance vs. Plouffe et al

Page 4 of 5

otherwise, the court nevertheless notes that if this case was to proceed to trial, a spoliation remedy likely would be warranted.  There is a common law "duty to preserve documents, electronically stored information, or tangible evidence based on the existence of pending, threatened, or reasonably foreseeable litigation."  Spoliation of Evidence ch. 1 (3d).  Spoliation refers to the destruction of evidence that should have been preserved.  Where the circumstances warrant it, courts have inherent authority (as well as under the discovery rules) to remedy the spoliation of evidence.  *Id*. ch. 3. "Destruction of evidence is sanctionable when a party knows *or reasonably should know* that discoverable material is relevant to pending, imminent, or reasonably foreseeable litigation." Destruction of Evidence § 3.11 (emphasis added).

> Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence.  Our adversarial process is designed to tolerate human failings—erring judges can be reversed, uncooperative counsel can be shepherded, and recalcitrant witnesses compelled to testify.  But, when critical [evidence goes] missing, judges and litigants alike descend into a world of ad hocery and half measures—and our civil justice system suffers.

*United Med. Supply Co., Inc. v. U.S.*, 77 Fed. Cl. 257, 258–59 (Fed. Cl. 2007), quoted in Spoliation of Evidence ch. 1.  Cincinnati reasonably should have known that the faucet, sink, and drainage, prior to its destruction, would be mission-critical—not merely relevant—tangible evidence that should be preserved for purposes of its subrogation action.  It did not do so.

There is no need to address Cincinnati's motion to exclude the Plouffes' expert and his report.

ORDER

For the foregoing reasons, the Plouffes' motion for summary judgment is granted.  Defendant to prepare a final judgment order.

Robert R. Bent,
Judge

Entry Regarding Motion
235-4-18 Wncv The Cincinnati Insurance vs. Plouffe et al